Argued 21 February; decided 12 May, 1900.

## MERRIAM *v.* VICTORY MINING COMPANY.

[56 Pac. 75, 58 Pac. 37, 60 Pac. 997.]

WAIVING RIGHT TO APPEAL BY ACCEPTING PAYMENT.

1. While a party cannot appeal from a judgment in his favor after receiving the benefits thereof, his right of appeal is not waived where the amount accepted would accrue to him in any event, notwithstanding the appeal, which was for the enforcement of a disputed right to money in addition to the amount accepted.

DISMISSING APPEAL—VOLUMINOUS RECORD.

2. A motion to dismiss on the ground that appellant had no interest in the fund to be distributed will be continued until a hearing on the merits, where the record is voluminous.

DISMISSING APPEAL—EVIDENCE DEHORS THE RECORD.

3. Evidence outside of the record will not be received in the appellate tribunal to contradict the record of the court below; though such evidence may be considered to show material occurrences after the judgment or decree appealed from: *Ehrman* v. *Astoria Ry. Co.* 26 Or. 377, distinguished.

CORPORATIONS—PREFERRED CREDITORS*—OBLIGATION OF CONTRACT.

4. The priority sometimes accorded unsecured claims against corporations over prior contract debts is limited strictly to railroads, and on the ground that their continued operation is a matter of public concern; but it does not apply to claims against ordinary private corporations.*

ACCOUNTING BY RECEIVERS—RIGHT TO APPEAL.

5. A receiver may appeal from an order of the court directing him to pay over money in his hands, when such order erroneously fixes the amount in his possession, and directs him to turn over more than he has in his custody.

From Douglas: J. C. FULLERTON, Judge.

*NOTE.—On this question see the authorities collected in a monograph, "Claims Which Take Precedence Over Mortgages of Railways and Like Property:" 54 Am. St. Rep. at pp. 432, 433. See, also, note to *Farmer's Loan & Trust Co.* v. *Grape Creek Coal Co.* 16 L. R. A. 603, and *Hanna* v. *State Trust Co.* 30 L. R. A. 201.—REPORTER.

37 OR.—21.

Decided 13 February, 1899.

ON FIRST MOTION TO DISMISS APPEAL.

Suit by Phillip Merriam against the Victory Placer Mining Co., J. T. C. Nash, and others. From a decree directing distribution of the assets of defendant company, J. T. C. Nash appealed. Motion to dismiss appeal.

OVERRULED.

*Messrs. O. P. Coshow* and *O. H. Irvine*, for the motion.

*Messrs. Geo. H. Durham* and *Wm. R. Willis, contra.*

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

In the course of litigation affecting it, S. W. Blaisdell was appointed receiver of the defendant corporation. During his management of the business of the concern as such receiver, many claims were presented to him for adjustment and payment; among them, the claims of Willis Kramer and nineteen others for labor and material, aggregating $7,013.09. J. T. C. Nash also presented a claim for $90,000 on account of certain bonds executed by the corporation, and secured by mortgage upon the real property of the concern; and Thomas E. Sturgeon for $2,000, being the amount of four such bonds alleged to have been secured by the same mortgage. The receiver filed what was intended to be his final account in June, 1897; but this does not appear to have been acted upon by the court, and on January 6, 1898, he filed an account supplemental thereto, which together showed the condition and status of the estate at that time, including a list of all claims theretofore presented to the receiver for adjustment. A summary of the account is as follows:

| | |
|---|---:|
| Total cash received | $ 50,815 19 |
| Amount paid out under direction of the court | 3,450 96 |
| Balance in hands of receiver | $ 47,364 23 |

Upon the final hearing and settlement of these accounts, the court below ordered and directed that the receiver pay—First, the additional expenses of the receivership, amounting to $46.50; second, the labor and material claims due Kramer and others, amounting to said sum of $7,013.09; and, third, to J. T. C. Nash the residue of the funds on hand, except the sum of $3,500, which he was required to retain to await the final determination of certain proceedings instituted by one J. M. Stevenson upon alleged claims against the corporation and receiver, but that, in case such proceedings were not prosecuted with effect to final determination, then that said latter sum be also paid to Nash. From the order and decree thus entered, Nash appeals, and complains of the preference given the claims for labor and material over his. Later a cross appeal was filed by Sturgeon, who complains that his claim was not allowed to share pro rata with that of Nash in the surplus funds. It appears by a subsequent report of the receiver that Nash received from him, and receipted for, the sum of $36,804.23, being all of such residue except the said $3,500, prior to the institution of the appeal; and the labor and material claimants now move to dismiss upon the ground that the appellant has received and accepted the fruits of the decree appealed from, and has thereby waived and precluded his right to such appeal.

1. The rule is well settled in this state and elsewhere that a party who receives a substantial benefit or the fruits of the litigation cannot be heard to complain of the action of the court which gave him the award or judgment. The right to proceed upon a judgment or decree, and invoke the process of the court to that end, and thus acquire or otherwise secure and enjoy the fruits of such judgment or decree and the right to appeal therefrom, are nonconcurrent and wholly inconsistent; so that an election to enforce the edict of the court, and to secure

the benefits awarded, acted upon to the extent that an appropriation has been accomplished, is a renunciation of, and precludes, the right of appeal : *Moore* v. *Floyd*, 4 Or. 260 ; *Ehrman* v. *Astoria Ry. Co.* 26 Or. 377 (38 Pac. 306); *Bush* v. *Mitchell*, 28 Or. 92 (41 Pac. 155). The rule, however, does not militate against the right of appeal by a party who accepts the amount voluntarily tendered or paid on a judgment or decree. Such right is not inconsistent with the acceptance of the amount admitted to be due by the pleadings in the case (*Portland Const. Co.* v. *O'Neil*, 24 Or. 54, 32 Pac. 764 ; *Stemmer* v. *Scottish Ins. Co.* 33 Or. 65, 49 Pac. 588); the purpose of the appeal being the enforcement of a contested or disputed right, and such as is additional merely to that which is conceded by all parties to the litigation. In consonance with this right is the right also to accept the benefits awarded by the judgment or decree, and, at the same time, prosecute the appeal, where that which is awarded would accrue to the appellant in any event ; that is, whether a reversal, modification, or affirmance be obtained : *Stemmer* v. *Scottish Ins. Co.* 33 Or. 65 (49 Pac. 588); *Hinchman* v. *Point Defiance Ry. Co.* 14 Wash. 349 (44 Pac. 867, 869) ; *In re Day*, 18 Wash. 359 (51 Pac. 474). Now, so far as the respondents the labor and material claimants are concerned, the appeal cannot affect the relief obtained by Nash. These claimants secured by the decree all they sought, to the full limit of the relief demanded ; and the surplus only after satisfying them, save the $3,500 directed to be retained to meet the contingencies subsisting, as it respects the Stevenson claims, is what the appellant was awarded. His appeal is prosecuted for the purpose of contesting the right of the labor and material claimants to what was awarded to them, and directed to be first paid out of the funds in the hands of the receiver. As between them and the appellant,

they could not recover any more or acquire any better or superior rights in any event; nor could it depreciate or detract from the amount accorded the appellant whether the claimants were successful or not in their resistance of the appeal. It is said, however, that, if Sturgeon should prevail in his cross appeal, it would depreciate from the amount awarded to Nash. But the answer to this objection is that Sturgeon is not seeking to have the appeal dismissed. In point of fact, his only remedy is in having the appeal prosecuted, especially upon his own part, to final determination, for the decree of the court below is against him. He is not complaining of the appeal, and the labor and material claimants cannot complain upon the ground that Nash has accepted benefits under the decree which belonged to Sturgeon, so long as he has accepted nothing of their seeking. In so far as the Stevenson claims are concerned, $3,500 was especially reserved by decree of the court, which was supposed to cover all contingencies that might arise in any event respecting them; so that the acceptance of the award by Nash could not impair in any way the rights of Stevenson if he was complaining. At all events, Nash's receipt of the funds was not inconsistent with his right of appeal, as it may concern the claimants who are resisting his appeal by the motion to dismiss. The motion will therefore be overruled.                                    MOTION OVERRULED.

Decided 31 July, 1900.

ON SECOND MOTION TO DISMISS APPEAL.

*Mr. O. P. Coshow*, for the motion.

*Mr. Andrew M. Crawford, contra.*

PER CURIAM. 2. This is a motion to dismiss an appeal from an order of distribution of certain funds in the

hands of a receiver on the ground that the appellant had no interest in or claim to the fund at the time the appeal was taken. The record is voluminous, and somewhat complicated, and we are of the opinion that the consideration of the motion ought to stand over until the cause is reached for hearing on the merits, and it is so ordered.

MOTION OVERRULED.

Decided 12 May, 1900.

ON THE MERITS.

For appellant Nash there was a brief and an oral argument by *Messrs. Geo. H. Durham* and *Wm. R. Willis.*

For appellant Blaisdell, as receiver, there was a brief over the name of *Andrew M. Crawford,* with an oral argument by *Mr. Edward B. Watson.*

For respondents, unsecured creditors, there was a brief over the names of *O. P. Coshow* and *C. A. Sehlbrede,* with an oral argument by *Mr. Coshow.*

Mr. JUSTICE BEAN delivered the opinion of the court.

On or about October 5, 1893, the defendant, the Victory Placer Mining Co., a corporation organized under the laws of the State of Illinois, purchased of the appellant Nash certain placer mining ground in Douglas County, and issued and delivered to him in part payment therefor $90,000 in bonds, secured by a first mortgage on the property. The company immediately thereafter entered into possession of the mine, and continued to operate it until November 18, 1896, when, being insolvent, and unable to meet its obligations, S. W. Blaisdel was appointed receiver, and as such took charge of all the property of the corporation. At the time of his appointment the corporation was indebted to divers and

sundry persons for labor and supplies furnished and used in operating the mine in the aggregate amount of $7,013.09, claims for which were afterwards presented to and allowed by the receiver. On December 21, 1896, Nash presented to the receiver his claim, duly verified, wherein he stated that in July, 1894, in a suit against the defendant corporation, it was decreed that the bonds held by him were given in part payment of the purchase price of the property, and were a first lien thereon, prior in time and right to the other bonds described in the mortgage and to all other indebtedness of the corporation. On April 23, 1897, the receiver, under an order of the court, sold the property of the corporation to Frank B. Smith, the agent and representative of certain of the bondholders, for $50,000, and the sale was confirmed. On February 21, 1898, the court ordered the proceeds of the sale applied—first, to the payment of the expenses of the receivership; second, to the payment of the unsecured claims for labor and supplies furnished prior to the appointment of the receiver; and, third, the balance to Nash, except $3,500, which the receiver was directed to hold until the final determination of certain proceedings then pending against him.

Thereafter, on June 9, 1898, upon the application of one of the unsecured, but preferred, creditors, the court ordered the receiver to pay into court within thirty days the amount due the labor and material claimants. On July 2, 1898, Nash appealed from the order of distribution, whereupon the receiver refused to pay the money into court, and on December 5, 1898, an order was made removing him from office, and requiring him to pay into court within ten days the sum of $50,000, the proceeds of the property sold by him, less $3,497.46, costs and expenses of the receivership as allowed by the court. Thereafter Nash, certain of the other creditors of the cor-

poration, and the receiver separately moved the court for
a revocation of the order removing the receiver, and re-
quiring him to pay the money into court, and in support
thereof the receiver filed a report to the effect that, al-
though he reported the sale as made for cash, no money
was in fact paid, for the reason that the real purchasers
were John Addison, William L. Breyfogle, and E. N.
Camp, who, together with Nash, at the date of the sale
owned all of the first mortgage bonds of the corporation
except $2,500, and all the other claims filed with the re-
ceiver, except the unsecured claims preferred by the order
of distribution ; that at the time of the sale it was agreed
between such parties and the receiver that the amount of
the bonds and claims held by them should be considered
as an offset against any bid they should make or cause to
be made for the property, so far as they should be ad-
judged valid by the court, and that Addison and Camp
would advance and pay to the receiver from time to time
all sums necessary to defray the expenses of the receiver-
ship, and which should be decreed by the court to be dis-
bursed for any purpose whatever ; that in pursuance of
such agreement they paid to the receiver all expenses of
the receivership and disbursements theretofore allowed by
the court and directed to be paid, and had paid to Nash on
his bonds the sum of $36,804.23 ; that the receiver never
actually had in his hands any sum of money, except as
needed to pay expenses and the disbursements allowed
and directed by the court to be paid, but treated the sale
as cash for the reasons already stated, and therefore at no
time had it been, or was it then, possible for him to com-
ply with the order, and pay into court the amount of the
bid, or any part thereof.  An order was thereafter made
allowing the receiver credit for $36,804.23, paid to Nash
on his claim, and for which he filed a receipt ;  but the

court refused to revoke the order removing him, and he appeals.

3. The unsecured, but preferred, creditors in the order of distribution of February 21, 1898, have filed a motion to dismiss the appeal of Nash on the ground that he had no appealable interest at the time it was taken. The evidence bearing upon this question is not in the record, but the fact is sought to be proven here by the affidavit of counsel, from which it appears that on the twenty-seventh of November, 1896, Nash entered into an agreement with John Addison to sell to him the bonds of the defendant corporation which he (Nash) held; that, after Nash had presented his claim to the receiver, and it had been allowed, and before the order of distribution, this contract was consummated, and the bonds sold and transferred by Nash to Addison. It is quite well settled that evidence of facts outside of the record, occurring after the rendition of the judgment in the court below, and which affect the proceedings of the appellate court, when deemed necessary, will be received and considered by such court for the purpose of determining its action: *Ehrman* v. *Astoria Ry. Co.* 26 Or. 377 (38 Pac. 306); *Dakota County* v. *Glidden*, 113 U. S. 222, 28 L. Ed. 981 (5 Sup. Ct. 428); *Elwell* v. *Fosdick*, 134 U. S. 500, 33 L. Ed. 998 (10 Sup. Ct. 598). But the record of the court below, upon which the appeal is based, cannot be contradicted or varied by an *ex parte* showing in the appellate court. From the affidavit filed in support of the motion to dismiss it appears that Nash sold and transferred the bonds, if at all, prior to the final decree of distribution in the court below; hence the effect of the showing made here is to contradict the order adjudging and decreeing that at the time of the distribution he was the owner of the bonds in question, and as such entitled to receive a share of the proceeds of the property. We are of the opinion, therefore,

even if it be conceded that the transfer by a party of his interest in the subject-matter of pending litigation requires the substitution of his successor in interest, and the subsequent proceedings to be had in his name (a question at least doubtful under our statute), *Elliot* v. *Teal*, 5 Sawy. 188 (Fed. Cas. No. 4389), that the motion in this case must be denied, because it is an attempt to contradict the record of the court below.

4.    The remaining question, so far as Nash's appeal is concerned, is one of priority in the distribution of the proceeds of mortgaged property in the hands of a receiver between a mortgagee and unsecured claimants for labor and supplies furnished the mortgagor prior to the appointment of the receiver, and after the execution and recording of the mortgage.    It is sought to sustain the decree of the court below by invoking the rule that the court appointing a receiver may, under certain circumstances, order and direct the payment of debts for labor or supplies contracted by a corporation within a limited period before the appointment of the receiver.    But this doctrine is peculiar to railroads, and is nowhere applied, so far as we have been able to ascertain, to an ordinary corporation.    It may be regarded as settled that, under special circumstances, the court appointing a receiver for a railroad may direct the payment out of the earnings of the road, or the corpus of the property, of a certain class of ante-receivership debts, notwithstanding the prior lien in favor of the mortgage bondholders :  20 Am. & Eng. Enc. Law (1 ed.), 417.    But "this doctrine rests," says Mr. Chief Justice WOLVERTON, "upon the ground that the maintenance of the road and the prosecution of its business are essential to the preservation of the mortgage security.    The primary object is to keep the enterprise a going concern, from considerations of both public and private interest :" *McCornack* v. *Salem St. Ry. Co.* 34 Or.

543 (56 Pac. 518). And Mr. Smith, in his work on Receiverships, says : ''The reasons for these rules are that a railroad is a public concern, and is operated and kept in motion for the benefit of stockholders, mortgage bondholders and the public, all of which are interested in it as a going concern :'' Smith, Rec. 575. The power of a court to appoint a receiver in a proper case is undoubted, but it has no general authority by reason thereof to affect vested rights, or the contract obligations of the parties.

"The appointment of a receiver," says Mr. Justice Brewer, "vests in the court no absolute control over the property, and no general authority to displace vested contract liens. Because in a few specified and limited cases this court has declared that unsecured claims were entitled to priority over mortgage debts, an idea seems to have obtained that a court appointing a receiver acquires power to give such preference to any general and unsecured claims. It has been assumed that a court appointing a receiver could rightfully burden the mortgaged property for the payment of any unsecured indebtedness. Indeed, we are advised that some courts have made the appointment of a receiver conditional upon the payment of all unsecured indebtedness in preference to the mortgage liens sought to be enforced. Can anything be conceived which more thoroughly destroys the sacredness of contract obligations? One holding a mortgage debt upon a railroad has the same right to demand and expect of the court respect for his vested and contracted priority as the holder of a mortgage on a farm or lot. So, when a court appoints a receiver of railroad property, it has no right to make that receivership conditional upon the payment of other than those few unsecured claims which, by the rulings of this court, have been declared to have an equitable priority. No one is

bound to sell to a railroad company or to work for it, and whoever has dealings with a company whose property is mortgaged must be assumed to have dealt with it on the faith of its personal responsibility, and not in expectation of subsequently displacing the priority of the mortgage liens. It is the exception, and not the rule, that such priority of liens can be displaced. We emphasize this fact of the sacredness of contract liens for the reason that there seems to be growing an idea that the chancellor, in the exercise of his equitable powers, has unlimited discretion in this matter of the displacement of vested liens :" *Kneeland* v. *American Loan Co.* 136 U. S. 89, 97 (10 Sup. Ct. 953).

It will thus be seen that the right of a court appointing a receiver to give priority of payment to unsecured debts over the lien of a mortgage is restricted to creditors of railroads which are public concerns, and is only exercised as to them under special circumstances, and in favor of a particular class of claims. As between creditors by mortgage and general creditors, the former are entitled to priority of payment out of the mortgaged property by virtue of their contracts and the law of the land, and the court has no authority to disregard their contract rights. It was so held even where a court had authorized a receiver, in order to prevent a threatened destruction of property, to borrow money for the purpose of paying unsecured debts, and to issue certificates therefor, containing on their face a declaration that they were issued for "a debt of the receiver incurred for the benefit and protection of the property in his hands, and a first lien thereon prior to the mortgage :" *Raht* v. *Attrill*, 106 N. Y. 423 (60 Am. Rep. 456, 13 N. E. 282). See, also, *Phillips* v. *Wise* (Tex. Civ. App.), 31 S. W. 428. It follows, therefore, that the order of the court below giving to the unsecured claims for labor and supplies, however meritorious, priority over

the holders of the first mortgage bonds in the distribution of the proceeds of the mortgaged property, finds no support in the law, and cannot be sustained without destroying the sacredness of a contract obligation.

It is contended at the hearing that the mortgage did not cover all the mining property sold by the receiver; but there are no facts in the record upon which to base this contention. Indeed, the record indicates that the entire property was covered by the mortgage. It is so stated in the petition for the appointment of the receiver, the receiver's report, and in Nash's claim as filed with and allowed by the receiver.

5. A motion was also made to dismiss the appeal taken by the receiver on the ground that a receiver has no right of appeal from an order requiring him to pay funds in his hands into court. As a general rule, this is probably true; but it is held that, when the order erroneously fixes the amount of the property in his hands, and directs him to turn over more than he has in his custody, it is essential to the protection of his rights that he be allowed an appeal, and the law gives its sanction thereto : *How* v. *Jones*, 60 Iowa, 70 (14 N. W. 193). But, as the conclusion we have reached in reference to the distribution of the fund disposes of the interests of the contesting creditors, it is unnecessary to determine in this suit when and under what circumstances, if at all, a receiver may appeal from an order removing him.

It follows from the foregoing that the decree of the court below as to the distribution of the fund must be reversed, and a decree entered here directing its payment to the holders of the first mortgage bonds, less the unpaid costs and expenses of the receivership, to be ascertained and allowed by the court below. REVERSED.