Motion to dismiss denied October 6, 1914, argued on the merits March 29, modified and remanded April 27, 1915.

# STACY *v.* McNICHOLAS.

(144 Pac. 96; 148 Pac. 67.)

**Appeal and Error—Proceedings to Transfer Cause—Time for Proceedings.**

1. In a receivership proceeding, an appeal taken June 4th, from a decree entered on April 6th, in favor of petitioning holders of receiver's certificates, authorizing the receiver to apply to the United States District Court, in which bankruptcy proceedings were pending, for leave to sell property, was in time, under Laws of 1913, pages 617, 618, authorizing an appeal within 60 days from the entry of the judgment, decree, or order appealed.

**Appeal and Error—Decisions Reviewable—Default Decree.**

2. In a suit for the appointment of a receiver, a decree upon the petition of holders of receiver's certificates, which petition was contested by the trustee and bankruptcy of the former owner, is not a decree by default for the purposes of review.

**Appeal and Error—Motion to Dismiss—Review—Scope and Extent.**

3. Under Section 558, L. O. L., providing that the appellate court may review any intermediate order involving the merits or necessarily affecting the judgment or decree appealed from, the question whether orders, made more than 60 days prior to the notice of appeal from the decree, to which error is assigned, can be considered will not be determined on a motion to dismiss the appeal.

## ON THE MERITS.

**Corporations—Receivers—Appointment—Jurisdiction.**

4. Generally, a receiver of an insolvent corporation should not be appointed without notice to the parties affected and before they have an opportunity to be heard, though the statute does not require notice, for the rules of equity which govern, when not inconsistent with the statute, require notice.

> [As to when it is proper to appoint a receiver, see notes in 64 Am. Dec. 482; 72 Am. St. Rep. 29. As to appointment before institution of suit, see note in Ann. Cas. 1912B, 236.]

**Corporations—Receivers—Ex Parte Appointment—Acquiescence.**

5. A defendant may waive an objection to an ex parte appointment of a receiver by acquiescence by failing to interpose a timely objection or by participating in the proceedings after the appointment.

> [As to necessity of giving notice of application for appointment of receiver, see note in Ann. Cas. 1915C, 897.]

**Corporations—Receivers—Ex Parte Appointment.**

6. A receiver of a corporation was appointed without notice. The holder of the property as trustee appeared and answered in the suit

in which the receiver was appointed and asserted that a mortgage was a first lien on the property. He participated in other proceedings. He objected to the receiver operating the business of the corporation and to the making of the expenses of operating a lien prior to the mortgage, but he did not object to the appointment of the receiver. *Held,* that since under Section 392, L. O. L., the trustee could, without joining his beneficiary, maintain a suit, the parties interested acquiesced in the appointment of the receiver without notice.

### Receivers—Expenses—Liability.

7. Property placed in the hands of a receiver by order of court of equity is chargeable with the necessary expenses incurred in taking care of and saving the property.

### Receivers—Expenses—Liability.

8. Allowance to a receiver as compensation for his services is taxable as part of the costs and is entitled to priority of payment as a lien on the property.

### Receivers—Expenses—Liability.

9. Expenses incurred by a receiver for labor and supplies necessary to care for and preserve the property are taxable as costs and are entitled to priority of payment as a first lien on the property as against a prior mortgage.

### Receivers—Authority—Power of Court.

10. The court appointing a receiver of a private corporation may not authorize the receiver to continue the business, in the absence of consent of prior contract lien creditors.

### Receivers—Expenses—Payment.

11. Expenses incurred by a receiver of mining property in operating the mines not necessary for the care and preservation of the property should be paid as far as possible from the income realized from the mines, and any balance of operating expenses remaining unsatisfied must share with other like claims.

### Receivers—Appointment—Receivers' Certificates.

12. Where a receiver of a corporation was appointed, and necessary expenses for the preservation of the property authorized before a mortgage foreclosure suit, the necessary expenses evidenced by receiver's certificates issued by the clerk under stipulation of the parties are entitled to priority over the mortgage.

[As to receiver's certificates, see notes in 128 Am. St. Rep. 102; Ann. Cas. 1913C, 39.]

### Corporations—Receivers—Appointment—Jurisdiction of Court.

13. A court of equity has no inherent power to appoint a receiver of an insolvent corporation, and has no jurisdiction to appoint a receiver, except as ancillary to an actual pending suit against the corporation.

### Bankruptcy—Administration of Estate—Receiver Appointed by State Court.

14. Where a receiver of a corporation appointed by a state court did not file his bond or oath, nor take possession of the property

until less than four months prior to bankruptcy of the corporation, the bankruptcy court must administer the affairs of the insolvent estate, and claims represented by certificates of a prior receiver may be presented and allowed in the bankruptcy proceedings.

From Josephine: FRANK M. CALKINS, Judge.

In Banc.    Statement by MR. JUSTICE RAMSEY.

This suit appears to have been commenced in 1910 by James E. Stacey, Daniel Myers, David J. Nye, George T. Briggs and C. H. McKeown, against James H. McNicholas, Old Channel Hydraulic Mines Company, a corporation, Thomas W. Browning, Old Channel Mining Company, an Illinois corporation, and William Ulrich, trustee of the Old Channel Mining Company, bankrupt, for an accounting and to have a receiver appointed.    The respondents move to dismiss the appeal.                    MOTION DENIED.

*Mr. O. H. Lawler, Mr. Alfred E. Reames, Mr. H. D. Norton, Mr. William C. Hale* and *Mr. O. S. Blanchard,* for the motion.

*Messrs. Colvig & Roberts, Messrs. Durham & Richard* and *Mr. Jacob E. Dittus, contra.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

On August 5, 1910, L. C. Hudson was appointed receiver of the mining property described in the complaint.    On July 10, 1911, said receiver was discharged.    On February 24, 1913, the court below appointed J. F. Reddy receiver of said property.    It seems that some or all of the mining property described in the complaint belonged to the Old Channel Mining Company, an Illinois corporation, and that on August 18, 1913, the District Court of the United

States for the District of Oregon made and entered an order adjudging said corporation to be bankrupt, and William Ulrich, one of the appellants, was appointed by said United States District Court trustee in bankruptcy of said corporation, and he duly qualified as such trustee. Said trustee in bankruptcy claimed the right to the possession of said mining property as trustee of said corporation, under the bankruptcy laws of the United States. On September 18, 1913, he petitioned the court below for an order thereof authorizing and requiring J. F. Reddy, said receiver, to turn over to him said mining property as trustee in bankruptcy of said corporation. The court below refused to grant the prayer of his petition. In February, 1914, 31 holders of receiver's certificates issued in this cause applied to the court below for a decree for the sale of said mining property by J. F. Reddy, receiver of the property of said bankrupt corporation, it being claimed by said petitioners that J. F. Reddy was the receiver of said property. The appellant William Ulrich, as trustee in bankruptcy of said corporation, filed in said court written objections to the granting of the relief asked by said petitioners, in which he claimed, *inter alia,* that the order of the court below appointing J. F. Reddy receiver of said property was void, and that Reddy did not qualify as such receiver until after the petition to have said corporation adjudged a bankrupt was filed in the United States court. He claimed, also, that he was in possession of said property as trustee, and that he, as trustee, was duly authorized to sell said property, and that the United States District Court for the District of Oregon had issued an injunction restraining J. F. Reddy, as receiver of said property, from in any manner interfering with said property or with the control of said trustee over the

same. Said trustee prayed said court not to authorize J. F. Reddy, as receiver, to sell said property, etc. The application of the various interested parties for the relief referred to *supra,* and to which the appellant William Ulrich, as trustee of said bankrupt corporation, objected as stated above, came on for hearing in the court below on the 6th day of April, 1914, and on that day a decree was rendered by said court containing many provisions, and among them, a provision directing J. F. Reddy, as receiver, to apply to the United States District Court for an order dissolving all restraining orders issued by said United States court pertaining to said mining property, and ordering J. F. Reddy, as receiver, upon the dissolution of said restraining orders issued by the United States court, to proceed and advertise the property of the Old Channel Mining Company in Oregon for sale and to sell the same in the manner stated in said decree, etc. The appellant Ulrich, as trustee, appeared in said proceeding and opposed the granting to Reddy, receiver, the power to sell said property, claiming that Reddy was not legally receiver of said property, and that the appellant, as trustee in bankruptcy of said corporation, was in possession thereof and had the right to sell it, and was endeavoring to do so. The Old Channel Mining Company and William Ulrich, its trustee, appealed from the whole said decree.

1. The respondents moved to dismiss the appeal on the ground:

"That the record fails to show any appeal taken within the time limited by law from any appealable order, judgment, or decree made or entered in said court and cause."

The notice of appeal states that the appellants appeal—

"from the decree of the Circuit Court of the State of Oregon, for the county of Josephine, and from the whole thereof, rendered and entered in the above-entitled suit on or about the 6th day of April, A. D. 1914, said decree being in favor of the petitioning holders of receiver's certificates and J. F. Reddy and against William Ulrich, as trustee in bankruptcy of the Old Channel Mining Company."

The notice of appeal properly describes the decree appealed from. The decree is dated April 6, 1914, and it is favorable to the holders of receiver's certificates and J. F. Reddy and against William Ulrich, trustee in bankruptcy of the Old Channel Mining Company. The notice of appeal appears to have been served on the 3d and 4th days of June, 1914. The undertaking for the appeal was served and filed within the time allowed by law. Under the present statute (Laws 1913, pp. 617, 618), if the appeal is not taken in open court at the time of the rendition of the judgment or the decree or final order appealed from, it must be taken by serving and filing the notice of appeal within 60 days from the entry of the judgment, decree or order appealed from, and the undertaking for the appeal must be served and filed within 10 days from the giving or service of the notice of the appeal. We find that the appeal from said decree was taken within the time allowed by law therefor.

2. The decree appealed from was not rendered by default. It was based on a showing made shortly before its rendition. In this proceeding, Ulrich, trustee in bankruptcy, appeared, filed and presented objections to the application for a decree for the sale of said property then made, and his objections were overruled.

The decree appealed from appears to have been made upon the petition of 31 holders of receiver's certificates, asking for a decree for the sale of the property of the Old Channel Mining Company. The decree appealed from was based on this petition rather than upon the original complaint. We hold that the appellants had a right to appeal from said decree.

3. In the abstract the appellants set forth 19 alleged errors, for which they ask a reversal of the decree appealed from, and they refer to various orders made by the court below that they assert were erroneous. The respondents contend, by their motion to dismiss the appeal, that as to most, if not all, of these orders the time for appealing therefrom had expired prior to the date of the taking of this appeal. But this appeal is taken only from the decree rendered on April 6, 1914, and the notice of appeal does not refer to any other decree or order. Section 558, L. O. L., provides that, upon an appeal, the appellate court may review any intermediate order involving the merits or necessarily affecting the judgment or decree appealed from. To what extent those orders can be reviewed on this appeal will be a proper question for consideration on the trial on the merits; but it is not proper to consider that question on a motion to dismiss the appeal. The decision of the court in granting the decree for the sale of the property of the Old Channel Mining Company can be reviewed on the appeal, because that is the chief thing incorporated into the decree appealed from, but what else may be reviewed at the trial on the merits it is not proper to determine on this motion. The fact that there is a question that can properly be reviewed at the hearing on the merits necessitates the denial of the motion to dismiss; the appellants having perfected their appeal in accordance with the statute. The mer-

its of the case cannot be considered or determined on a motion to dismiss the appeal.

3 Cyc., page 197, say:

"*On a motion to dismiss* [*an appeal*], *the appellate court will not pass on the merits of the appeal.* And in case that, in passing on a motion to dismiss, the court would be required to examine the entire record, the motion will not be considered until final submission on the merits."

In Elliott's App. Proc., Section 522, the author says:

"A motion to dismiss [an appeal] does not involve any questions concerning the merits of the controversy; it simply brings in question the effectiveness of the appeal. *On such a motion the court will only inquire whether the appeal lies and whether it is properly taken and perfected.*"

3 Cyc. Pl. & Pr., page 347, says:

"The inquiry on a motion to dismiss [an appeal] is accordingly limited to ascertaining whether an appeal lies in a given case, and whether it has been regularly taken and perfected."

2 Hayne on New Trial and Appeal (Revised ed.), Section 272, says:

"Nor should an appeal be dismissed in advance of the hearing on the merits, upon the ground that the appellant is merely a formal party, and has no real interest in the controversy, or that the appeal was taken for delay, or that the matter has been decided on a previous appeal. These questions cannot be determined in advance of a hearing on the merits, and the court will never consider the merits on a mere motion to dismiss."

In *Corder* v. *Speake,* 37 Or. 105 (51 Pac. 647), the syllabus is in part:

"A motion to dismiss an appeal or to affirm a judgment proceeds on the theory that the appellate court is

without jurisdiction, or that the appellant has not com-
plied with some rule of court, and unless one of these
conditions is made to appear, the motion must be over-
ruled.   In passing on a motion to dismiss an appeal,
the merits of the case will not be considered.''

The respondents contend that most of the matters
referred to in the appellants' assignment of errors
cannot be reviewed on this appeal, because they tran-
spired more than 60 days prior to the taking of the
appeal.   They can present their contentions on those
points at the hearing on the merits, but not on this mo-
tion to dismiss.   We conclude that the appellants had
a right of appeal from the decree of April 6, 1914, and
that they properly perfected their appeal.

The motion to dismiss the appeal is denied.

MOTION DENIED.

Modified April 27, 1915.

ON THE MERITS.

(148 Pac. 67.)

Department 2.   Statement by MR. JUSTICE BEAN.

This is an appeal by the Old Channel Mining Com-
pany, an Illinois corporation, and William Ulrich, its
trustee in bankruptcy, from a decree authorizing J. F.
Reddy, the receiver, to sell certain property belonging
to the above corporation and confirming as liens
against such property certain receiver's certificates is-
sued under a prior receivership.

The pleadings show that prior to August 10, 1909,
the Old Channel Mining Company was the owner and
in possession of certain placer mining ground and min-
ing property situate in Josephine County, Oregon.
This company on the above date entered into a con-

tract whereby it was to sell its property to James H. McNicholas for $110,000, on terms of $25,000 cash and $85,000 represented by notes secured by mortgage on the property. In order to facilitate matters, the legal title of the property was placed in the name of Thomas W. Browning, who held the same as trustee for the corporation. The sale was consummated, and Browning executed a deed; McNicholas paying the agreed amount in cash and executing a mortgage on the property for the balance. McNicholas thereafter organized the Old Channel Hydraulic Mines Company, to which on May 2, 1910, he transferred the property purchased from Browning. This latter company assumed the payment of the mortgage given by McNicholas as part payment for the mine. The Old Channel Hydraulic Mines Company did not prosper, and the plaintiffs, being stockholders, brought this suit, asking for an accounting by McNicholas and the appointment of a receiver. The court appointed L. C. Hudson as receiver.

As a basis for this suit, after the formal allegations as to the corporate character of the defendant corporations, the plaintiffs in their averments stated the following, in substance: After McNicholas purchased the mining property, he caused a pretended corporation to be effected under the laws of the territory of Arizona with an ostensible capital of $5,000,000, the shares of which were of the par value of $1 each. Two million shares and over were sold to various persons, among whom were plaintiffs, at from 30 to 75 cents per share. One million shares were pretended to be held in the treasury, and the remainder thereof, about two million, were held by the defendant James H. McNicholas, who never paid upon the mining property any sum other than the $25,000. The mortgage

was largely fictitious and intended to privately, illicitly and fraudulently benefit him or his associates. McNicholas falsely represented the mining property to be of very great value, the best placer mine in the world, that operations would commence with a production sufficient to pay 1 per cent per month, and that the corporation would acquire good title to the mine. McNicholas concealed the fact of the mortgage. He never transferred the mine to the Arizona corporation nor accounted for the proceeds of the stock sold. Upon discovering the condition of affairs, the plaintiffs caused the Oregon company to be organized, capitalized the same as the Arizona corporation, and placed the stock thereof in the hands of the trustee. McNicholas represented to the plaintiffs and other stockholders that large sums of money would be received from the clean-up of the mine for the season of 1909–1910, but in truth the property was in the possession of a lessee who cleaned up all the gold resulting from the operation of the mine up to February 11, 1910. McNicholas, as the secretary of the Oregon corporation, took charge of the operations thereof during said mining season and represented that more stock must necessarily be sold to cover operating expenses, as a result of which he sold large amounts of stock to the plaintiffs and others for such purpose, but applied no part of the proceeds to the payment thereof, took charge of the clean-ups thereafter, and at the close of the mining season there existed a deficit for operating expenses, none of which has been paid, and for which liens have been filed. The Arizona as well as the Oregon corporation was largely overcapitalized. The property did not warrant a legitimate capitalization exceeding $1,000,000, and it is necessary that the

76 Or.—12

same be reduced and canceled in all sums over and above the amounts actually held by *bona fide* subscribers. The plaintiffs further allege that, by reason of the facts set forth, the Oregon corporation is wholly insolvent and unable to continue its corporation business; that all the directors thereof reside outside the State of Oregon, except James McNicholas, who claims and pretends to have a residence in Oregon, but who is in fact most of the time without the state. Plaintiffs pray that a hearing be had; that defendant James McNicholas be required to account for all stock sold by him in both corporations; that the true consideration for the purchase of the mine be ascertained, the amount of the mortgage be fixed, the indebtedness of the company be determined and paid; that a receiver be appointed to take charge of the property; that receiver's certificates be issued for funds for operating expenses and other charges.

The receiver filed his oath and undertaking on August 9, 1910, and on the 27th of that month the court made an order empowering him to borrow money for the purpose of preserving and operating the property, and authorizing the issuance of receiver's certificates, making the same a lien upon the property. On September 13th of that year the plaintiff filed an affidavit and order for publication of summons and affidavit of mailing summons. On September 26th Thomas W. Browning was granted leave to sue the receiver in a suit to foreclose his mortgage. Plaintiffs filed their proof of publication of summons November 19, 1910. On December 1st of the same year a motion for a default against James McNicholas was filed. Thereafter, on December 27th, findings of fact and conclusions of law were filed and a decree rendered and entered which on January 3, 1911, was set aside and

vacated as to the defendant Thomas W. Browning. With permission of the court, Browning filed an answer to the effect that the mortgage executed by McNicholas was genuine, that plaintiffs knew of it, and that it was a first lien upon all the real and personal mining property in the sum of $85,000, with interest, and prayed that the same be decreed as such. Browning filed a motion February 6, 1911, supported by affidavits to discharge and restrain the receiver, and objected to the receiver being allowed to work the property, borrow money, incur indebtedness, or do anything that would in any way affect his rights in the property. The court overruled the objections and allowed the receiver to work the property, and in so doing he incurred indebtedness amounting to $4,090.46, including his fees and other expenses. At this time the plaintiffs appeared to have determined that there would be nothing left for them after the satisfaction of the mortgage, or for some other reason abandoned their suit, and about July 10, 1911, the court, on motion of Browning, made an order discharging the receiver. At the time of entering the order, the court left open the matter of the issuance of the receiver's certificates in settlement of the indebtedness and expenses incurred by the receiver. The parties stipulated that the court might order the clerk of the court to issue such certificates, if any should be issued; neither party waiving any objections to the right of the court to do so. On March 11, 1912, the court made an order dismissing this suit, and on the same date made another, authorizing the clerk to issue receiver's certificates in the sums stated above. There were "allowed as a charge against the property in the hands of the receiver." The appellants now contest the right of the court to appoint a receiver to operate

the mine and to authorize the issuance of receiver's certificates for expenses in so doing.

The pleadings further show that nothing was done in this matter for several months. On December 5, 1912, a notice was filed notifying the defendants that the holders of receiver's certificates would make application to the Circuit Court for the appointment of another receiver, and that a hearing would be had on December 26th. It appears that this notice was served upon the defendants by registered mail. On February 24, 1913, an application for the appointment of a receiver was filed by L. C. Hudson and several other holders of receiver's certificates, reciting that these certificates issued by order of the court constituted a lien upon the property of the Old Channel Mining Company, that the property was in danger of deteriorating, and asking for the appointment of a receiver, not only for the conservation of the property of the Old Channel Mining Company, pending the payment of the certificates, but for its operation, for an order to create a fund for the payment thereof, or, if no funds could be so obtained, for an order authorizing the sale of the property to pay the same. On the same date the court made an order appointing J. F. Reddy as such receiver, and authorized him to take possession of all the property, care for and conserve the same against loss and damage, but to incur no expenses without an order therefor, except to file an inventory, and ordered him to give bond before entering upon his duties. J. F. Reddy did not file his bond until April 17, 1913. On July 8, 1913, less than four months after Reddy qualified as receiver, an involuntary petition in bankruptcy was filed against the Old Channel Mining Company in the United States District Court for the District of Oregon. On July 11,

1913, William Ulrich was duly appointed receiver in bankruptcy by said court and qualified as such on the 12th of that month. August 18, 1913, the district court made an order decreeing and adjudging the Old Channel Mining Company bankrupt. Reddy, as receiver, appeared in the bankruptcy case and opposed the adjudication, but his motion was denied. Thereafter the creditors of the company elected William Ulrich trustee of said bankrupt, and he qualified as such. He thereafter, on September 18, 1913, filed a petition in the Circuit Court for Josephine County, asking for an order requiring Reddy, as receiver, to turn over the property of said bankrupt to him, as trustee. This request was denied by the court. On February 4, 1914, the holders of receiver's certificates filed another notice in this cause and served the same on the attorneys for the trustee. In this notice it was shown that these parties would apply to the Circuit Court for such orders and proceedings as might be necessary to enable petitioners to recover judgment and decree as prayed for in their petition filed on February 24, 1913. Ulrich, as trustee, filed his objections to the entry of such order by the court. The court did not order a hearing of these objections, and over the same entered its decree on April 6, 1914, which is hereby appealed from.

J. F. Reddy also represents that an injunction order restraining him, as receiver, from dealing with the property of the Old Channel Mining Company, issued by the United States District Court for Oregon in 1913, was vacated by that court upon his petition filed in November, 1914, and that a proposition to lease the mine with an option to purchase has been made to him as such receiver.    MODIFIED AND REMANDED.

For appellants there was a brief over the names of *Messrs. Colvig & Roberts, Messrs. Durham & Richard* and *Mr. Jacob E. Dittus,* with an oral argument by *Mr. G. M. Roberts.*

For respondent J. F. Reddy, as receiver, there was a brief and an oral argument by *Mr. Asa C. Hough.*

MR. JUSTICE BEAN delivered the opinion of the court.

It is first contended by counsel for the appealing defendants, whom we will hereafter style defendants, that the appointment of the first receiver, L. C. Hudson, was void because made *ex parte* and without showing why notice was dispensed with, and hence all charges made and expenses incurred by this receiver were without authority and constituted no lien upon the property of the Old Channel Mining Company. The position of counsel for J. F. Reddy, as the present receiver, the only person appearing to represent the holders of the receiver's certificates as respondent, is that any irregularity in the appointment of the first receiver was waived; that the appointment was acquiesced in by the Old Channel Mining Company and Thomas W. Browning, its trustee; and that the claims of the holders of the receiver's certificates for the fees of the receiver and expenses of caring for the mining property and operating the same are valid liens upon the property. It seems that the uncontradicted assertions in the complaint and application of the stockholders of the Old Channel Hydraulic Mines Company to stay the hand of James H. McNicholas in the misapplication of the proceeds of the sale of shares of stock and output of the mine, for an accounting and cancellation of certificates of stock, and for the appointment of a receiver to take charge of and preserve

the mining property, constituted at least a *prima facie* case for the proper appointment of a receiver to save the property for whomsoever it might be adjudged to belong; that it was for the best interest of the mortgagee, whose mortgage was assailed but sustained, that such a step should be taken. That the stockholders finally ascertained in the suit that they had been completely swindled, and that nothing would be left for any of them after the satisfaction of the mortgage of $85,000 held by Thomas W. Browning, trustee, would not change the apparent situation. Their claims were nevertheless *bona fide* and unquestioned. In other words, from necessity the matter did not depend upon the final outcome of the suit. The application showed that the Oregon corporation was insolvent. Section 1108, subdivision 4, L. O. L., authorizes the appointment of a receiver in cases provided for by statute, when a corporation is insolvent: *Wills v. Nehalem Coal Co.,* 52 Or. 70, 76 (96 Pac. 528). As to the service, it was further shown that all the directors resided outside of the state, except James McNicholas, who claimed a residence therein, but who was, for the most part, without the state. He was given an opportunity to be heard a short time afterward, but did not avail himself thereof, and does not appear to be selling any more shares of stock in the corporation or taking any interest herein. Service of process upon defendants was made by publication and mailing soon after the appointment.

4, 5. As a general rule, a receiver should not be appointed *ex parte,* without notice to the parties to be affected thereby, and before they have had an opportunity to be heard in relation to their rights; and even though there is no provision in the statute requiring notice of the application for the appointment of a re-

ceiver, under the rules of equity in matters of appointment of receivers, which govern when not inconsistent with the statutes on the subject, such notice should be given. A defendant may waive any objection to an *ex parte* appointment by acquiescence therein, by failure to interpose a timely objection thereto, or by participating in the proceeding thereafter: 34 Cyc. 117, 162; *Anderson* v. *Robinson,* 63 Or. 228, 233 (126 Pac. 988, 127 Pac. 546).

6. It may be conceded that the appointment of this receiver was at the time irregular. It appears that the defendants acquiesced therein by failing to make timely objection, and by participating in the proceedings. It should be remembered that the property of the Old Channel Mining Company was held by Thomas W. Browning, as trustee. He was therefore authorized to represent the interests of this company herein. Under the Code, he could bring suit, as such trustee, without joining his beneficiary: Section 392, L. O. L. Thomas W. Browning appeared and answered in the suit and asserted that the mortgage was a first lien upon the property. He partook in numerous other proceedings in the case. He objected to this receiver operating the mine and to the expenses of such operation being made a lien on the property prior to the mortgage, but we nowhere find that he objected to the appointment of this receiver for the purpose of preserving the property, or questioned the authority conferred upon such officer to do so. We conclude, therefore, that defendants acquiesced in the order of the court in this respect, and only objected to the incurring of indebtedness by the receiver in the operation of the mine. It would perhaps have been better form for a temporary appointment to have been made until notice could have been given. Upon the application

of Browning to discharge and restrain the receiver, the court required him to cease incurring expenses and file a report, and, when the same was filed, he was discharged.

7–9. This brings us to the grave question of the standing of the expenses and indebtedness incurred by the receiver, to which objection is made. Property properly placed in the hands of a receiver by order of a court of equity becomes chargeable with the necessary expenses incurred in taking care of and saving it: 34 Cyc. 350. The allowance of $930 made to L. C. Hudson, receiver, as compensation for his services, was taxable as part of the costs, and as such was entitled to priority of payment as a first lien upon the mining property: 34 Cyc. 351. The other expenses contracted by this receiver for labor and supplies, which were necessary in order to care for and preserve the ditches, machinery and other property of the mine, come within the same rule. The amount of the last-named expenditures cannot be ascertained from the record. The trial court should segregate these items of expense from any there may be not coming within this class, and make an equitable adjustment thereof.

10. As to the debts contracted by the receiver in carrying on the business of the Old Channel Hydraulic Mines Company and operating the mine, the rule announced by this court in *Investment Corp.* v. *Hospital,* 40 Or. 523, at page 532 (64 Pac. 644, 67 Pac. 194, 56 L. R. A. 627), should be applied. In appointing a receiver of a corporation not *quasi* public in character, or authorizing its receiver to continue its business, a court of equity has no power, in the absence of the consent of prior contract lien creditors, to decree that the indebtedness of the defendant Old Channel

Hydraulic Mines Company shall take precedence over such prior contract liens as the mortgage held by Browning as trustee. As said by Mr. Chief Justice BEAN in *Investment Co.* v. *Hospital,* 40 Or., at page 533 (67 Pac. 195, 56 L. R. A. 627):

"But under none of the authorities is a court authorized to thus displace contract liens upon the property of individuals or private corporations."

Any other rule would open the way to impair solemn obligations and destroy vested rights. The authority to displace prior contract liens is an exception and not the rule. This extraordinary power is ordinarily exercised by a court of equity only as against parties who seek its aid, and is usually restricted to cases of railroads and other like corporations of a *quasi*-public character. It cannot be extended so as to give unsecured creditors of an ordinary corporation preference over prior contract liens: 34 Cyc. 356; *Merriam* v. *Victory Mining Co.,* 37 Or. 321 (56 Pac. 75, 58 Pac. 37, 60 Pac. 997); *McCornack* v. *Salem Ry. Co.,* 34 Or. 543 (56 Pac. 518, 1022); *Wood* v. *Guarantee Trust Co.,* 128 U. S. 416 (32 L. Ed. 472, 9 Sup. Ct. Rep. 131); *Hanna* v. *State Trust Co.,* 70 Fed. 2 (16 C. C. A. 586, 30 L. R. A. 201); *Farmers' Loan & Trust Co.* v. *Grape Creek Coal Co.* (C. C.), 50 Fed. 481 (16 L. R. A. 603).

11. The claims for expenses in operating the mines, not shown to be necessary for the care and preservation of the property, should be paid, as far as possible, from the income realized from the mine. In equity all the funds so obtained should first be applied to such payment, and if any part thereof has been diverted or applied for other purposes, either in the payment of the fees of the receiver or other expenses

incurred in caring for the property, the matter should be corrected, and, if not paid, an equal amount should be declared a first lien upon the property in question and, when realized from the proceeds thereof, applied to such payment. If any balance of such operating expenses remains unsatisfied, it should share with other like claims.

12. It is next suggested by defendants that, by reason of the foreclosure and sale under the Browning mortgage, the property, as bought in by him, was free from any claim or charge by reason of the receivership. The decree in the foreclosure suit is merely mentioned in the record. It is not pleaded, and the provisions thereof are not before us. We cannot assume that the trial court made conflicting orders or decrees. The receiver was appointed, and the necessary expenses authorized before such suit was instituted. The receiver's certificates are only evidence of the claims. The clerk issued them upon the stipulation of the parties for convenience, and they have the same force and effect as though issued before the receiver was dismissed.

13. The appointment of J. F. Reddy as the second receiver is assigned as error, and it is contended that such order authorized him to act merely as a custodian and caretaker of the property. We think the point is well taken. At the time of making the order, the original suit had served its full purpose and had been dismissed as to everything, except the settlement of costs and expenses. The appointment was made upon the application of persons who were strangers to the record. Plaintiffs had abandoned the suit, and the defendants objected to granting him the authority of a receiver. He was named as receiver of a different corporation than Hudson, the first receiver. A

court of equity has no jurisdiction or authority to appoint a receiver, except as ancillary to an actual pending suit. As such court it has no inherent power to appoint a receiver of an insolvent corporation: *McNary* v. *Bush,* 35 Or. 114 (56 Pac. 646); *Young* v. *Hughes,* 39 Or. 586 (65 Pac. 987, 66 Pac. 272); *Anderson* v. *Robinson,* 63 Or. 228, 233 (126 Pac. 988, 127 Pac. 546); High on Receivers (3 ed.), § 17; Smith on Receivership, §§ 228, 371 et seq.; *Vila* v. *Grand Island etc. Co.,* 68 Neb. 222 (94 N. W. 136, 97 N. W. 613, 110 Am. St. Rep. 400, 4 Ann. Cas. 59, 63 L. R. A. 791); *State ex rel.* v. *Ross,* 122 Mo. 435 (25 S. W. 947, 23 L. R. A. 534).

14. Soon after this appointment the Old Channel Mining Company was adjudged a bankrupt, and its duly qualified trustee in bankruptcy applied for an order of the trial court requiring J. F. Reddy to turn over the property belonging to the bankrupt to him. All the claims represented by the receiver's certificates have been presented and allowed in the bankruptcy proceedings. It would seem more consistent with an orderly administration of the affairs of the bankrupt and less likely to result in confusion for such an action to be taken. The federal bankruptcy law is paramount, and it appears that it was invoked in Re Old Channel Mining Company, and thereafter it was necessarily exclusive: *In re Watts,* 190 U. S. 1 (47 L. Ed. 933, 23 Sup. Ct. Rep. 718).

Although J. F. Reddy was appointed receiver prior to the bankruptcy proceedings, he did not file his bond or oath, nor take possession of the property, nor in any manner comply with the order of the court until less than four months prior thereto. Under these circumstances, the court of bankruptcy was legally empowered to control and administer the affairs of

the insolvent estate: *Southern Loan & Trust Co.* v. *Benbow* (D. C.), 96 Fed. 514.

The decree of the lower court of April 6, 1914, authorizing J. F. Reddy, as receiver, to sell the property of the Old Channel Mining Company described in the record, will be reversed as to that part of the decree, and the cause will be remanded to the lower court, with directions to modify the order declaring the receiver's certificates to be first liens upon the property, as above indicated, and that J. F. Reddy be authorized to deliver the property in question to the trustee of the Old Channel Mining Company, bankrupt. Under all the complicated circumstances of the case, the costs should be taxed against the property involved; and it is so ordered.

MODIFIED AND REMANDED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE EAKIN and MR. JUSTICE HARRIS concur.