Argued November 24, 1948; reversed March 15, 1949

# LEWIS & DALIN, INC. *v.* E. H. CLARKE LUMBER CO., LANDON, DIEBOLD AND FAY

204 P. (2d) 130

*R. N. Kavanaugh,* of Portland, argued the cause and filed a brief for Appellants.

*Orval Thompson* argued the cause for Respondent. On the brief were Weatherford & Thompson, of Albany.

Before ROSSMAN, Chief Justice*, and LUSK, BELT and HAY, Justices.

LUSK, C. J. †

The question on this appeal is whether an insurance agent who, prior to the appointment of receivers of a corporation, advanced premiums on policies of insurance sold by him to the corporation is entitled to a preference over other unsecured creditors, in the amount of such advances for which he had not been reimbursed by the corporation at the time such receivers were appointed.

On March 20, 1945, the Circuit Court for Linn County appointed Carl D. Diebold and Elery G. Fay receivers of E. H. Clarke Lumber Company, a corporation. The receivers were not authorized to carry on the corporate business. The first report, filed April 19, 1945, showed assets of the total value of $45,689.64

---

* Chief Justice when this case was argued.
† Chief Justice when this opinion was rendered.

and liabilities amounting to $72,601.29, the latter including a mortgage on the company's sawmill in the sum of $14,042.00.

On April 23, 1947, Max Landon, the respondent herein,. served upon the receivers his claim showing that between December 1, 1941, and March 10, 1945, at the special instance and request of E. H. Clarke Lumber Company, he sold to that company fire insurance policies for the agreed premium of $8,926.77 and that there remained due and unpaid on the account $1,611.96. The claimant averred:

> "That the account of claimant constitutes a preferred claim against the assets of said E. H. Clarke Lumber Co., in that said amount is for the premiums on fire insurance policies that covered the buildings and other property of said E. H. Clarke Lumber Co.; that claimant advanced the money and paid said premiums to the insurance companies writing said insurance policies; that said fire insurance policies protected the interests of all other creditors of said E. H. Clarke Lumber Co. and that if said buildings and other property covered by said fire insurance policies had been destroyed by fire that the proceeds from said policies would have taken the place of said buildings and other property as assets available for the satisfaction of the claims of the creditors of said E. H. Clarke Lumber Co."

The receivers, while conceding the correctness of the claim as a general claim, refused to allow it as a preferred claim. The matter was then presented to the court, which entered an order directing the receivers to pay the claim as a preferred claim. From that order the receivers have appealed.

■ There is no statute giving priority to such a claim, and we may accept as the general principle governing

the question the following statement by an authority relied on by both parties:

"With general creditors of the debtor whose claims are to be paid out of the general funds of the estate, as with the members of every other class of receivership claimants, the general rule is that 'equality is equity'. The court will not permit one creditor to obtain an inequitable or unlawful preference over the creditors of the same class. To warrant the enforcement in a receivership of one claim over another of the same class, there must be something in the intrinsic nature of such a claim conferring an equity superior to that of the latter claim." 45 Am. Jur. 186, Receivers, § 239.

See, also, *Berthold-Jennings L. Co. v. St. Louis, I. M. & S. R. Co.,* (C. C. A. 8th) 80 F. (2d) 32, 102 A. L. R. 688.

The claimant asserts that "a debt created to protect or preserve the property of the insolvent debtor has such an equity", and argues that, since a receiver should carry fire insurance to preserve and protect the property that comes into his possession, and since the premiums for such insurance are allowable as an expense of administration, the same rule should apply to a claim for premiums on insurance in existence before the receivership. The claimant, it is said, by advancing the money necessary to keep the policies in force, "thereby created a potential fund that would have taken the place of the property covered thereby and would have been available to pay the claims of creditors in the event the property had been destroyed by fire." The case of *Bailey v. Bailey,* 262 Mich. 215, 247 N. W. 160, is cited as holding that a debt for fire insurance premiums incurred before a receiver was appointed constitutes a preferred claim.

It is further said that "if the respondent had retained possession of the fire insurance policies that he issued and the property had been destroyed by fire, he would have had a lien against the proceeds of the policy for the amount of the premiums", citing 2 Couch, Cyclopeda of Insurance Law, § 483. This principle is said to establish an "intrinsic equity" in the claim.

In our opinion these contentions are not sound. The fire insurance was carried by the company to protect its own property and not its creditors—with the possible exception of the mortgagee, although of this there is no evidence—and the premiums were advanced by the claimant as a part of his business as an insurance agent. In a sense, every expense incurred by the company improving and making more valuable its plant gave an added protection to creditors. If a fire-extinguisher system had been installed and its operation had actually prevented a disastrous fire, it might be argued in the same way that the claimant argues, that the equipment had preserved the property for the creditors. But it would hardly be suggested, we think, that the unpaid creditor who sold the fire-extinguisher to the company would, therefore, have a "superior equity" entitling him to a preference over other creditors. The fact that no fire occurred and that the "potential fund" never came into actual existence adds nothing to the force of the claimant's argument.

The reasoning of Judge Bellinger in *Williams v. Groat,* (Circuit Court, D. Oregon) 73 Fed. 59, is applicable. The defendant in an unsuccessful action brought by a partnership for which a receiver was subsequently appointed, sought to have its judgment for costs in such action allowed as a preferred claim on the theory that "the action was prosecuted for the benefit of the assets in the receiver's hands." Con-

ceding that if the action was in the interest of the creditors the judgment should be paid as a preferred claim, the court said:

"* * * But this action cannot be distinguished in this regard from any other action that may have been brought and prosecuted by the partners during their management of the firm business. In a certain sense, all expenses and other indebtedness incurred by them were for the benefit of the fund that ultimately came into the receiver's hands. Probably, every unpaid creditor can make this claim to be preferred. In what respect, then, does this creditor have better right than others? It does not appear that Groat & Williams were insolvent when this action was brought and these expenses were incurred, and an action by a solvent suitor is not for the benefit of his creditors, who are in no way concerned, so long as there is enough to pay their debts. * * * The court cannot know that expenses incurred in the prosecution of an action are for the benefit of creditors, unless it appears that a recovery, if then had, would have been impounded for the creditors' benefit. In my opinion, it is not enough that it so happens that, if a judgment in favor of the plaintiffs had been had at the time the petitioner recovered judgment, the creditors would have had the benefit of it. All the remaining assets would, upon such an argument, come into the receiver's possession, burdened with expenses and other charges incurred in the conduct of the business by which such assets were created and preserved. It is only where the expenses were incurred while the action was being prosecuted, no matter in whose name, for the benefit of the creditors, or where it was in fact for their benefit, that such expenses are entitled to preference."

So here the indebtedness for insurance premiums was not incurred for the benefit of creditors, but to protect the company's own interest.

The case of *Bailey v. Bailey,* supra, cited by the claimant, does not support his position. In that case the cost of premiums on fire insurance incurred by the receiver himself was held to be a preferred claim as a proper expense of administration; premiums contracted by the insolvent before the receiver was appointed were not involved. It is only "such a portion of the premium as covers the insurance during the receivership" which has precedence over claims of general creditors. 1 Clark on Receivers (2d ed.) 493, § 378 (e). See *Koch v. The St. Charles Hotel Co.,* 13 Oh. Cir. Ct. (N. S.) 163. *Smyth v. Brown,* 26 F. (2d) 462 (C. C. A. 1st), holds that an insurance broker's claim to priority for unpaid premiums on employers' liability and public liability insurance had no basis in statute, precedent, or equity. Although this was not fire insurance, the same kind of argument could be made for according priority to the claim as is made here.

■ The argument based upon an agent's lien has no merit, not only because the claimant did not retain possession of the policy, but because the principle which he invokes applies only to the agent of the insured. See *McKenzie v. Nevius,* 22 Me. 138, 38 Am. Dec. 291; and Couch, supra. It does not appear that the claimant was the agent of the insolvent corporation in procuring this insurance, but rather, as he himself alleged in his claim, that he "at the special instance and request of said E. H. Clarke Lumber Co. sold and delivered to it certain fire insurance policies", etc.

The claimant invokes the following principles as stated in his brief:

"Where debts have been incurred prior to the appointment of a receiver in the usual course of

business and for the protection and preservation of property and funds which should have been used to pay such debts were applied to other purposes, there is a diversion of funds and the holder of such a debt is entitled to a preference in the payment of his claim, even as against secured creditors.''

In support of the foregoing the following cases are cited: *Fosdick v. Schall,* 99 U. S. 235, 25 L. ed. 339; *Barnum v. Southern Oregon Traction Co.,* 100 Or. 652, 195 P. 580, 197 P. 269, 198 P. 520; *Le Hote v. Boyet,* 85 Miss. 636, 38 So. 1, 3 Am. Cas. 705; *Manhattan Trust Co. v. Seattle Coal & Iron Co.,* 16 Wash. 499, 48 P. 333.

The foregoing rule is wholly without application to the facts of this case. It is a doctrine evolved in railway receiverships, which may be stated as follows: Where income of a railroad company which should have been applied to the payment of current indebtedness is used to pay interest on bonds secured by a mortgage on the company's property in order to prevent foreclosure, upon the company becoming insolvent and the appointment of a receiver, the court may, in the exercise of its equity powers, require the amount of such diversions to be restored to the fund in the hands of the receiver and applied to the payment of the claims of general creditors, thus, to that extent, giving such claims priority over the lien of the mortgage. See High on Receivers (4th ed.) 508, § 394c. Quite apart from the fact that the present case involves no controversy between a general creditor and a mortgagee, and apart too from the fact that no such diversion of income appears, the doctrine is by the weight of authority limited in its application to receiverships over railways or other quasi-public corporations and is not applicable in the case of a purely private corporation. High, op. cit. 381, § 312d.

The cases of *Le Hote v. Boyet,* supra, and *Manhattan Trust Co. v. Seattle Coal & Iron Co.,* supra, represent the minority view, which is not recognized in this state. See *Stacy v. McNicholas,* 76 Or. 167, 186, 144 P. 96, 148 P. 67; *Security Trust Co. v. Goble Railway Co.,* 44 Or. 371, 375, 74 P. 919, 75 P. 697; *Merriam v. Victory Mining Co.,* 37 Or. 321, 56 P. 75, 58 P. 37, 60 P. 997. In the case last cited Mr. Justice Robert S. Bean, after a review of the authorities, said:

"It will thus be seen that the right of a court appointing a receiver to give priority of payment to unsecured debts over the lien of a mortgage is restricted to creditors of railroads which are public concerns, and is only exercised as to them under special circumstances, and in favor of a particular class of claims." (37 Or. 332)

No case has been cited, and we have found none, which supports the claimant's asserted right to be accorded priority over other unsecured creditors, and in our opinion the claimant has no such superior equity as would entitle him to such priority.

The order of the Circuit Court is reversed.

HAY, J., did not participate in the decision of this case.