## SECURITY TRUST CO. *v.* GOBLE RAILROAD CO.

[74 Pac. 919, 75 Pac. 697.]

RAILROADS—PRECEDENCE OF UNSECURED DEBTS OVER MORTGAGES.

1. Unsecured creditors of corporations claiming priority in the payment of their debts over prior secured debts must show that they are clearly within the exceptions under which such preference may be allowed.

RAILROADS—FORECLOSURE OF MORTGAGE—LABOR CLAIMS.

2. Where services rendered by laborers to a railroad company within 90 days prior to the appointment of a receiver of its property in proceedings to foreclose a prior mortgage thereon were not rendered in the furtherance of its railroad business, but in a logging venture in which the railroad was chiefly engaged at the time, such interveners are not entitled to a priority in the payment for such services over the mortgage lien.

IDEM.

3. The fact that the earnings of the railroad prior to the receivership were more than sufficient to pay all its operating expenses, including such labor claims, does not entitle the labor claimants to priority where such earnings arose from the railroad's logging operations, and the labor performed was not necessary to keep the railroad a going concern.

RAILROADS—PRIORITY OF LABOR CLAIMS—STATUTES.

4. Section 1083 of B. & C. Comp., which provides that it shall be the duty of a receiver to pay out of the first receipts and earnings of the insolvent corporation, after paying current operating expenses under his administration, the wages of all employés and laborers which accrued within six months prior to the appointment of such receiver; and that he shall also pay the wages of all employés and laborers employed by him at least once every 30 days out of the receipts and earnings, and, if he shall not take in sufficient moneys from the receipts and earnings, then he shall issue certificates to such employés, which he shall pay out of the first moneys coming into his hands from the receipts and earnings of the property under his charge, in the order of their issuance, was not intended to apply to earnings prior to the receivership, or to subject the tangible property of the corporation to the payment of such debts.

From Columbia: THOMAS A. MCBRIDE, Judge.

The plaintiff, the Security Savings & Trust Company, having a mortgage upon the rights of way, lands, tenements, franchises, and property of the defendant, the Goble, Nehalem & Pacific Railroad Company, and also a chattel mortgage upon its personal property and effects, instituted this suit August 9, 1901, to foreclose, and A. L. Maxwell was appointed receiver. A decree of foreclosure was rendered October 15, 1901, and on December 16, 1901, under an execution and order of sale duly issued, the Security Company bid in the property for $35,000, being less than the amount found due upon the mortgages, and on February 3, 1902, the sale was regularly confirmed. On December 21, 1901, T. C. Watts and others, having performed work and labor for the defendant company prior to the commencement of the suit, filed intervening petitions, praying an order directing the receiver to pay their claims. On February 3, 1902, William Meacham and others, and on July 7th following, Etta Spencer and others, having performed similar services, intervened with like prayer for relief, all claiming preference in payment over the mortgages of the Security Company. Appropriate answers were made to these petitions, and upon the issues thus formulated and the evidence adduced the trial court made findings of fact; among others the following:

"(2) That said claims and amounts were for labor and services rendered and supplies furnished by said parties to said railroad company, at its special instance and request, within 90 days next before the appointment of the receiver herein, and were necessary to the operation of said railroad, and said sums are justly due said parties.

"(3) That the Goble, Nehalem & Pacific Railroad Company was organized and incorporated under the laws of the State of Oregon, with its principal office and place of business at Portland, and its objects, among other things, were to construct, build, acquire, own, operate and maintain railroads; to engage in the business of carrying and

transporting for itself and others, for hire, passengers, logs, freight, and goods, wares, and merchandise in the states of Oregon, Washington, and elsewhere; that the railroad which it proposed to build was to be from a point on the Columbia River near Goble, in Columbia County, Oregon, to a point on Nehalem Bay, near the Pacific Ocean; that it had constructed said road a portion of the way, and at the time of commencement of this suit and appointment of the receiver, and for about five months prior thereto, was engaged in the operation of said railroad, and in getting out logs for transportation by its railroad, and its principal business was in getting out logs and transporting them over said railroad and selling the same.

"(4) That during the time of the operation of said railroad as aforesaid its earnings were more than sufficient to pay all its operating expenses, including the claims of petitioners, but there was paid out of such earnings upon the plaintiff's mortgage, and for improvements of the road, more than sufficient to pay all of such claims."

As one of its conclusions of law, the court found that petitioners were entitled to preference over the mortgages of the Security Company, and to receive out of the sale proceeds of the railroad and other property covered thereby the respective sums found due them, together with interest from August 9, 1901. From the decree entered in pursuance of these findings the plaintiff and the receiver appeal.                                        REVERSED.

For appellants there was a brief over the name of *Dolph, Mallory, Simon & Gearin*, with an oral argument by *Mr. Joseph Simon*.

For respondents there was a brief and an oral argument by *Mr. Horace B. Nicholas*.

MR. JUSTICE WOLVERTON, after stating the facts in the foregoing terms, delivered the opinion of the court.

1. There is no evidence accompanying the record, and we are to inquire whether the conclusion of law noted is

deducible from the findings of fact, the paramount question being whether these labor and supply claimants are entitled to a preference in payment over the mortgage creditor. The claimants base their right to such preference upon the major premise, namely, that the defendant company is a railroad corporation in the ordinary acceptation of the term, in the discharge of *quasi* public functions, such as a common carrier of freight and passengers for hire, which they urge is established by the findings of fact; and that, having performed labor and services and furnished supplies to such a corporation operating in that capacity within the last 90 days preceding the appointment of a receiver, they are entitled to a priority over the Security Company's lien upon the proceeds of the sale or the *corpus* of the property, and hence to a preference in payment. The primary and essential resource for the reimbursement and payment of the interest charges of the mortgagee of the properties of such a railroad is the net income of the road, obtained by deducting from the gross earnings what is required for necessary and managing expenses, proper equipment, and useful improvements. The mortgagee, therefore, in accepting the security, tacitly and impliedly agrees that the current debts and liabilities arising in the ordinary course of business in operating the road shall be paid from the current receipts before he has any right to such income, the underlying idea or controlling feature in this relation being that, from considerations of both public and private interest, the railroad should be kept and maintained a going concern. The security of the mortgagee is essentially and best subserved when these conditions are sustained, as it conduces to the preservation of the mortgaged property; hence it is that labor performed, services rendered, and supplies contributed and furnished, that conduce to the maintenance and continuance of the enterprise, and therefore to the con-

servation and preservation of the mortgaged security, are in equity and good conscience entitled to precedence when it comes to an adjustment of the earnings, and in many instances the marshaling of the assets or proceeds arising from the *corpus* of the property.

For the purpose of doing justice between the parties thus concerned, equity will take note of the gross earnings, the current operating charges, and the debts and liabilities arising on that account, and, if anything has been taken from what is styled by Mr. Chief Justice WAITE, in *Fosdick* v. *Schall*, 99 U. S. 235, as the "current debt fund," and put into that which belongs to the mortgage creditors, it will, when the property has gone into the hands of a receiver, and especially at the instance of the mortgagee, either for management and keeping the road in operation, or for winding up the business and disposing of the *corpus* of the property, restore that which has been misplaced, and, if necessary to a full adjustment, declare a preference upon the proceeds arising from the sale of the property; the rule governing all such cases being " that, if current earnings are used for the benefit of mortgage creditors before current expenses are paid, the mortgaged security is chargeable in equity with the restoration of the fund which has been thus improperly applied to their use": *Burnham* v. *Bowen*, 111 U. S. 776 (4 Sup. Ct. 675). The rule has since been several times reaffirmed by the same court. These observations as to the law upon the subject are fully sustained both upon principle and authority. See *Fosdick* v. *Schall*, 99 U. S. 235; *Burnham* v. *Bowen*, 111 U. S. 776 (4 Sup. Ct. 675); *McCornack* v. *Salem Ry. Co.* 34 Or. 543 (56 Pac. 518, 1022); *Miltenberger* v. *Logansport Ry. Co.* 106 U. S. 286 (1 Sup. Ct. 140); *St. Louis, A. & T. H. R. Co.* v. *Cleveland C. C. & I. Ry. Co.* 125 U. S. 658 (8 Sup. Ct. 1011); *Thomas* v. *Western Car Co.* 149 U. S. 95 (13 Sup. Ct. 824); *Virginia & A. Coal Co.* v. *Central R. &*

*B. Co.* 170 U. S. 355 (18 Sup. Ct. 657); *Southern Ry.* v. *Carnegie Steel Co.* 176 U. S. 257 (20 Sup. Ct. 347.)

The right thus established, giving labor and supply claimants contributing to the maintenance and operation of a railroad whose demands fall within the current expense account a priority over a mortgage incumbrance, is, however, notably an exception to the general rule. As was said by Mr. Justice Bean in *Merriam* v. *Victory Min. Co.* 37 Or. 321, 332 (60 Pac. 999): "The right of a court appointing a receiver to give priority of payment to unsecured debts over the lien of a mortgage is restricted to creditors of railroads, which are public concerns, and is only exercised as to them under special circumstances, and in favor of a particular class of claims." See, also, *United States Invest. Corp.* v. *Portland Hospital*, 40 Or. 523 (64 Pac. 644, 67 Pac. 194, 56 L. R. A. 627). So, it is said by Mr. Justice Brewer in *Kneeland* v. *American Loan Co.* 136 U. S. 89 (10 Sup. Ct. 950): "It has been assumed that a court appointing a receiver could rightfully burden the mortgaged property for the payment of any unsecured indebtedness. Indeed, we are advised that some courts have made the appointment of a receiver conditional upon the payment of all unsecured indebtedness in preference to the mortgage liens sought to be enforced. Can anything be conceived which more thoroughly destroys the sacredness of contract obligations? One holding a mortgage debt upon a railroad has the same right to demand and expect of the court respect for his vested and contracted priority as the holder of a mortgage on a farm or lot. So, when a court appoints a receiver of railroad property, it has no right to make that receivership conditional on the payment of other than those few unsecured claims which, by the rulings of this court, have been declared to have an equitable priority (being such as we have hereinbefore indicated and treated of). No one is bound to sell to a rail-

road company, or to work for it; and whoever has dealings with a company whose property is mortgaged must be assumed to have dealt with it on the faith of its personal responsibility, and not in expectation of subsequently displacing the priority of the mortgage liens. It is the exception, and not the rule, that such priority of liens can be displaced. We emphasize this fact of the sacredness of contract liens for the reason that there seems to be growing an idea that the chancellor, in the exercise of his equitable powers, has unlimited discretion in this matter of the displacement of vested liens." See, also, *St. Louis, A. & T. H. R. Co.* v. *Cleveland, C. C. & I. Ry. Co.* 125 U. S. 658 (8 Sup. Ct. 1011). The doctrine has been especially adhered to and reaffirmed in *Thomas* v. *Western Car Co.* 149 U. S. 95 (13 Sup. Ct. 824); *Virginia & A. Coal Co.* v. *Central R. & B. Co.* 170 U. S. 355 (18 Sup. Ct. 657); *Southern Railway* v. *Carnegie Steel Co.* 176 U. S. 257 (20 Sup. Ct. 347). The sacredness of contract rights and obligations cannot, therefore, be impinged upon or ruthlessly broken over, and he who would displace such rights must do so through contractual relations also arising by express or implied assent thereto, either by direct affirmance of the articles of contract or in the light of the conditions, laws, and usages prevailing, and, unless he is able to establish such relations, the courts are powerless to aid him, however deserving and meritorious may be his demands.

2. Coming now to the facts as indicated by the findings of the court, we may ascertain whether the claimants are within the exception and entitled to its benefits. The objects of the railroad company in its organization were, among other things, to construct, build, acquire, own, operate, and maintain railroads ; to engage in the business of carrying and transporting, for hire, passengers, logs, freight, and goods, wares, and merchandise. The company had constructed its road a portion of the way designated

by its articles of incorporation (to what distance it does not appear), and the court finds that at the time of the commencement of this suit, and for about five months prior thereto, the company " was engaged in the operation of said railroad, and in getting out logs for transportation by its railroad, and its principal business was in getting out logs and transporting them over said railroad and selling the same." It appears, therefore, that this company was engaged in the operation of its railroad, and it would seem to be a reasonable inference therefrom that it was carrying on the business for which it was organized—that is, the transportation of passengers and freight for hire— in which respect its functions were *quasi* public, so as to entitle persons performing labor for it and furnishing supplies necessary to its operation to a preference over the mortgage creditor in payment out of the earnings, if any such were misapplied to the payment of the Security Company's mortgages and improvements of the road as found. But the railroad company was engaged also in getting out logs, which, together with transporting them over its road and selling them, constituted its principal business. Such is manifestly not the business of the ordinary railroad, and does not partake in any manner of a public service. The road, therefore, although being operated for the purpose for which it was organized—that of the carriage of passengers and freight—thus giving it the semblance of a *quasi* public concern, was principally engaged in a business that was exclusively of private concern, namely, getting out logs, transporting and selling them, presumably upon its own account and for its own benefit. Now, we must assume, as the facts exclude any other reasonable hypothesis, that the labor and services rendered and supplies furnished were rendered and furnished the company for the carrying on and prosecution by it of the principal business in which it was then en-

gaged, and not in the ordinary operations of its railroad, which being so, the claimants have not brought themselves within the exception herein ascertained and defined, and the general rule must apply. To hold otherwise would be to put laborers in logging camps and persons furnishing supplies thereto upon a like footing with railroad employés contributing their labor and substance to the maintenance of the road, and this the law will not warrant or permit us to do. The interveners are therefore not entitled to a preference over the mortgages of the Security Company in the proceeds of the sale of the property.

3. The finding that the earnings of the railroad company were more than ·sufficient to pay all its operating expenses, including the claims of the petitioners, cannot help them, as the earnings must necessarily have arisen from the operations of the private business in which the company was engaged, and the labor performed and supplies furnished were not necessary for keeping the road a going concern, and thereby conserving the security of the mortgagee.

It appears from the findings, however, that the receiver has realized from the sale of other personal property belonging to the defendant railroad company not covered by the mortgages the sum of $670, and that, while he has paid said sum out upon the expenses of the suit and receivership, he has not as yet had any settlement with the court. As the primary purpose of the suit culminating in the appointment of the receiver was to foreclose the mortgages, the costs of the proceeding incident to the foreclosure should be borne and paid out of the *corpus* of the mortgaged property, and the $670, or such portion thereof as has not been disbursed in defraying the expenses of the receivership other than those incident to the foreclosure, should be shared among the general creditors of the company, the mortgagee becoming a general creditor as to the

balance due after application of the proceeds of the sale of the mortgaged property.

In pursuance of these considerations the decree of the circuit court will be modified, and one here entered accordingly, neither party to the appeal being entitled to costs or disbursements.                                    MODIFIED.

## ON MOTION FOR REHEARING.

MR. JUSTICE WOLVERTON delivered the opinion.

4. By his petition for rehearing, counsel for the interveners insists that the claimants are entitled to priority of payment over the mortgages of plaintiff by virtue of the statute, B. & C. Comp. § 1083. As we read this statute, it was not intended that such claims should be paid out of the *corpus* of the property in the hands of the receiver, but from the first receipts and earnings of the property coming into his hands after paying current operating expenses accruing under his administration; that is to say, the surplus of earnings coming into the hands of the receiver after his appointment, above current operating expenses, should be applied to the wages of laborers accruing within six months prior to the appointment of such receiver. That such is the proper interpretation of the statute is indicated by the latter clause, by which the receiver is required to pay the wages of all employés and laborers employed by him, at least once every 30 days, out of the "receipts and earnings" while the property is under his management, and, should he not take in sufficient moneys from the "receipts and earnings," then that he shall issue and deliver to each of such employés and laborers, upon demand, a certificate showing the amount due, etc., and thereafter he shall pay such certificates out of the first moneys coming into his hands from the "receipts and earn-

ings" of the properties under his charge, in the order of their issuance. It was not the purpose of this statute to take note of the earnings prior to the receivership, or to subject the *corpus* of the property to the payment of the labor claims; and the rule as enunciated in the main opinion is undisturbed, and not in manner entrenched upon by its operation. Neither is section 5659 of any avail to the claimants, as they have made no attempt to claim a lien in pursuance thereof. A rehearing will therefore be denied.

From a petition filed on the part of the trust company for a modification of the decree, which is not controverted by the claimants, although, as we are informed, their counsel has been furnished with a copy, we find that we misinterpreted the findings of the trial court respecting the status of the personal property from which the $670 was derived; having the impression that it was not covered by either of the mortgages. Being now advised to the contrary—that it was in fact covered by the chattel mortgage, and that the proceeds thereof were derived through a sale by the receiver under the order of the court—the decree heretofore rendered by this court will be modified so as to apply this fund to the payment of the mortgage indebtedness, the same as the proceeds of the sale of the real property.          Modified; Rehearing Denied.