WILLIAM H. JEFFERS

*v.*

NEW JERSEY AND PENNSYLVANIA RAILROAD COMPANY.

[Submitted December 28th, 1915.   Decided February 15th, 1916.]

Where the property of a railroad in receivership is sold in foreclosure of receiver's certificates under a decree that from the proceeds the certificates be paid first, the proceeds are applicable first to pay in full the receiver's fees and expenses, including counsel fees, and then to pay *pro rata* the receiver's certificates on a par with claims against him for car service and damages to shippers.

On motion for distribution of a fund in the hands of a receiver.

*Mr. Corwin Howell* and *Mr. John R. Hardin,* for the receiver.

*Mr. John B. Vreeland, contra.*

HOWELL, V. C.

The New Jersey and Pennsylvania Railroad Company owned a short line of railway constructed from Whitehouse to Morristown. It became insolvent and Frederick V. Pitney was appointed receiver in proceedings taken to wind up the affairs of the company. He found it necessary in the progress of his work to have more money than he could obtain from the ordinary transaction of the company's business, and in order to obtain funds in January, 1913, he made application to the court

CASES IN CHANCERY, 1916. 69

*86 N. J. Eq.* Jeffers *v.* N. J. & Penna. R. R. Co.

for leave to borrow money to the extent of $7,000 on receiver's certificates. Notice of the application appears to have been given to every one in interest by the ordinary order requiring creditors and stockholders to show cause why the petition of the receiver should not be granted. On January 28th, 1913, on the receiver's motion it was ordered that he have authority to borrow money by the issue of receiver's certificates of indebtedness maturing not later than twelve months from their date, and not at any one time to exceed the sum of $7,000, carrying interest at a rate not exceeding the legal rate, which certificates of indebtedness should be a first lien on the property, real and personal, of the defendant company in preference to mortgage, judgment or other liens or claims thereon, except only a mortgage held by the Vail estate. In pursuance of this authority on February 14th, 1913; he borrowed from a bank the sum of $3,000, and on June 13th, 1913, he borrowed from the same bank the further sum of $4,000, for which several amounts he issued his certificates, one for $3,000 and the other for $4,000; which after reciting the authority given to him in that behalf, certified that he as such receiver had received from the bank the said several sums of money to be used in the administration of his trust as such receiver under the direction of this court, and which as such receiver he promised to pay to the bank within twelve months with interest at the rate of six per cent., payable quarterly, out of the property of the railroad company or the proceeds thereof prior to any other debt or demand of any kind or character whatsoever. The form of the two certificates is the same, except that the junior certificate purports to be made subject to the prior certificate of $3,000 then held by the bank. The receiver continued to pay interest on the certificates until October 1st, 1913. There is now due on them the sum of $7,000 with interest from the last named date.

In the latter part of 1914 and the early part of 1915, proceedings were taken by the bank by a petition in the administration suit to foreclose the lien held by it, and such proceedings were had therein, that on January 28th, 1915, a decree was entered by which the amount due the bank was ascertained and fixed, and it was decreed that the said certificates of indebtedness

were a first lien upon all the property, real and personal, of the defendant company in preference to any mortgage, judgment or other lien or claim thereon, excepting only taxes due to the State of New Jersey and a mortgage held by the trustees of the Vail estate.

It was further decreed that all the property rights, privileges, effects and franchises of the railroad company and all its assets of any character or description whatsoever, and all the right, title and interest of said receiver thereto should be sold by the said receiver free and clear of any mortgage, judgment, receiver's certificates or a lien or claim thereon, except only the taxes and mortgage herein above mentioned, to raise and satisfy the debt therein found to be due to the said bank, and that out of the proceeds of the sale the receiver should pay the said bank its debt, interest and costs, with a counsel fee of $250. It was also provided that in case more money should be raised by the sale than should be sufficient to answer such payments, such surplus money should be administered by said receiver according to law and the further orders of this court. In pursuance of this power the receiver sold the said property for the sum of $28,600, out of which he paid by order of this court to the treasurer of the state the sum of $15,000 for taxes due it; there remains in his hands for distribution the sum of $13,985.77.

In addition to the receiver's certificates the receiver is also indebted, principally to railway companies throughout the United States for car service rendered to him as such receiver, in the sum of $2,019.12, and claims have been made against him also for damages arising out of losses to shippers by accidents, fires and other casualties.

There is also pending an application by the receiver and his counsel to fix and allow their fees, costs and expenses incurred in the administration of the assets of the defendant corporation. Notice was given to the creditors and stockholders that the receiver and his counsel would each ask for an allowance of $3,000. This was discussed at the hearing of the motion, and no objection having been made thereto, and the court being of the opinion that the services of the receiver and his counsel were worth the amounts asked for by them, such allowances will

be made, but they will be subject to such order as may be made regarding the distribution of the fund.

It is obvious that the receiver has not in hand a sufficient amount of money to pay all these claims and that one or more of them will have to be abated to a considerable extent. The principal contention at the hearing of the motion was between the bank holding the receiver's certificates on the one hand and the receiver and his counsel on the other hand, each claiming a prior right to be paid in full out of the fund in the hands of the receiver.

The question of law at issue here is one which has not had very much discussion. There are but two cases in this state so far as my investigation or those of counsel go that throw any light whatever upon the subject. The first one to which I will call attention is *Nessler* v. *Industrial Land Co., 65 N. J. Eq. 491,* in which Vice-Chancellor Emery seems to declare that where the fund in the receiver's hands is not sufficient to pay all the receiver's debts and other compensation the distribution must be *pro rata* upon the principle that the claims are all and equally debts or claims which should be paid by the trust fund as expenses of the receivership, and if the fund is not sufficient to pay all in full then they must abate *pro rata*. A further reason given by him is that if the receivers desire or intend to claim a preference in payment of their own compensation they must apply to the court not only for such order but also for authority to incur indebtedness which will be subject to their claim. This case was decided in 1903. No reference is made to the prior case (November, 1900) of *Chesapeake and Ohio Railway* v. *Atlantic Transportation Co., 62 N. J. Eq. 751,* in which the court of errors and appeals rendered a decision covering the point, and which could not have been brought to the attention of the learned vice-chancellor who decided the *Nessler Case*. In the *Chesapeake and Ohio Railway Company Case* there were three classes of claims struggling for priority of payment out of the fund which was insufficient to pay them all in full. The court of errors and appeals ordered them paid in the following sequence: (1) The receiver's allowance and the expenses of winding up the corporation, which would undoubtedly

include counsel fees allowed to the receiver's counsel; (2) the franchise tax owing to the state, and (3) the liabilities other than the expenses of the receiver above mentioned incurred by the receiver in carrying on the business in the due course of the administration of its affairs. The *Chesapeake and Ohio Railway Company Case* seems to be a clear authority in this state for directing the payment of receiver's fees and expenses of winding up, in preference to claims of other classes. No reasons are given in the opinion; it seems to have been taken for granted.

There are three English cases which throw light upon the question at issue. The first is *Strapp* v. *Bull Sons & Co. (1895), 2 Ch. 1; 64 L. J. Ch. 658.* There a debenture holders' action was brought against the company and a winding up petition was presented by an unsecured creditor. By consent an order was made in the winding up proceeding that the plaintiff in the action and the unsecured creditors should raise £5,000 in order to complete certain contracts then in progress by the insolvent company, which sum was to be a first charge in *pro rate* to debentures, and that no further debts or liabilities should be incurred. The sum of £4,250 was raised by the plaintiff and certain unsecured creditors in accordance with the order, and further liabilities were incurred by the receivers and managers for the purpose of completing the contracts. It was held that the receivers and managers were entitled to be indemnified against these liabilities out of the assets of the company in priority to the charge of £4,250. A reading of the opinion in the court of appeal will show that the decision was based upon the principle that further liabilities which were incurred in the face of an order to the contrary were expenses of administration which should be paid before any distribution could be made to creditors. Lord Halsbury said: "I do not concur in the idea that it ever could have been contemplated that those who were to take upon themselves the burthen of the management and receivership should be left to speculate on whether or not they would ever get paid anything. It was an essential part of the arrangement that some one should manage

this business, and it was necessarily implied in that arrangement that those who for the benefit of all concerned, and not merely for themselves, were entering into this arrangement and were carrying it on to its completion so there should be an ultimate resulting fund capable of being divided, should themselves be indemnified for what they were doing, namely, carrying on those contracts, and if you look, not at each one by itself, but at the whole of the orders as one arrangement to which all were parties and all tending to the same thing, it seems to me really to be free from doubt that that was the real meaning of the transaction."

The next English case is *In re Glasdir Copper Mines (1906), 1 Ch. 365; 75 L. J. Ch. 109.* This case is cited on the brief for the receiver. There a receiver and manager appointed in a debenture holders' action under orders of the court borrowed for preserving the property of the company certain sums which were advanced by certain of the debenture holders. The receiver gave in respect of the sums so borrowed formal charges which were declared to be "first charges" on the property, and provided that he should not be personally liable to repay the advances out of his own moneys. The property charged was sold by him and the proceeds proved to be insufficient to pay his expenses and remuneration and the sums borrowed. It was held that he was entitled to be indemnified in respect to his expenses and allowance out of the assets realized in priority to lenders' claims under their charges. This case was also in the court of appeal, and Mr. Justice Stirling in his opinion says, speaking of the case of *Strapp* v. *Bull:* "The case therefore is an authority for the proposition that where advances are made to a receiver and manager by a party to a debenture holders' action under an order of court which directs that the sum advanced shall be a first charge on the assets in priority to the debenture holders a receiver and manager is nevertheless entitled to take his costs and expenses properly incurred out of the assets in priority to the sums advanced if it should appear that the true bargain was that the assets should be realized by the receiver and manager for the benefit of all concerned.

74 CASES IN CHANCERY, 1916.

Jeffers v. N. J. & Penna. R. R. Co. 86 N. J. Eq.

"In my opinion the orders were made and the securities given and taken in the expectation of all parties that by means of the money advanced the receiver will be enabled to realize the property more advantageously, that is to say, in such a way as not only to repay the advances but to pay something to the debenture holders. Things have turned out very differently, but inasmuch as the receiver, in my view, acted in the realization of the assets for the benefit of every one concerned I think that he is entitled to indemnity out of the assets in priority to those for whose benefit he was acting."

The latest and only other English case is *In re Boynton* (*1910*), *1 Ch. 519; 79 L. J. Ch. 247.* In that case a receiver appointed by the court in a debenture holders' action was on the plaintiff's application given leave to borrow on the security of a first charge on the debenture assets for the purpose of carrying on the business. Money was advanced by a bank and the receiver executed a deed giving the bank a first charge on the assets, but not expressly excluding his personal liability. The assets proved insufficient. It was held: "That the proper inference to draw from the whole transaction, being that the receiver did not intend to pledge and the bank did not rely upon his personal credit, the assets must be applied first in paying the plaintiff's costs of action as between solicitor and client and the receiver's remuneration, and the balance paid to the bank in part discharge of their debt."

The same ruling was made in this country in the federal court of appeals from the fifth circuit in *Petersburg Savings and Insurance Co.* v. *Dellatorre, 70 Fed. Rep. 643; Pennsylvania, &c., Co.* v. *Mercantile Trust Co., 93 Fed. Rep. 60.* The reasoning upon which all these cases go seems to be that the court which appoints the receiver takes into its custody the property of the insolvent company for administration for the benefit of all concerned, secured and unsecured creditors and stockholders, and that it can hardly be expected that persons will be found to act as such receivers or as counsel in case there could be any doubt about their compensation or reimbursement for expenses. In the case now under consideration unless such

CASES IN CHANCERY, 1916. 75

*86 N. J. Eq.*       Jeffers *v.* N. J. & Penna. R. R. Co.

a distribution were permitted, the receiver would not only have to spend his time and labor for nothing, but might and probably would also be compelled to pay some portion of the expenses without the possibility of reimbursement.

But it is said on behalf of the bank that the order authorizing the borrowing of money on receiver's certificates provided that the certificates should be a first lien on the property, real and personal, of the defendant company in preference to any mortgage, judgment, order, liens or claim thereon, except only the Vail mortgage and taxes; that the certificates themselves contained a like provision, and that the same is embodied in the decree taken to foreclose the bank's lien under the certificates, and that having been made the subject-matter of judicial inquiry and decision, and having taken the form of a final judgment of a competent court, the right now claimed by the bank is therefore finally settled. This view leaves out of sight the fact that the bank could not realize upon the certificates held by it without an administrative proceeding carried on by some one as it was in this case carried on by the receiver, and that such administrative proceeding could not be carried on without the expenditure of time and money, and that the persons administering the fund had no other place to apply to for reimbursement than to the fund itself.

I therefore think that on both principle and authority the compensation of the receiver and his counsel and the expenses of the receivership must be first paid in full out of the fund in the receiver's possession, but I see no reason why the claims for car service and damages to shippers should outrank the claim of the bank; they seem to me to be on a par and that as between themselves they should *pro rate*.

I will advise a decree in accordance with these views.