Argued March 12; affirmed April 23, 1940

# PARKS *v.* CENTRAL DOOR & LUMBER CO. ET AL.

### (102 P. (2d) 706, 128 A. L. R. 375)

In Banc.

*L. V. Lundburg,* of Portland (Green & Boesen and R. K. Powell, all of Portland, on the brief), for appellants.

*A. E. Rosenberg,* of Portland (Coan & Rosenberg, of Portland, on the brief), for respondents.

ROSSMAN, J. This is an appeal by 169 individuals, all of whom were employees of one A. F. Biles, receiver of the Central Door & Lumber Company, from a decree of the circuit court which determined the priorities under which the creditors of the receiver should be paid. Since these 169 men are termed defendants in the briefs, we shall refer to them by that designation. The order attacked by this appeal was entered after Biles had resigned, one Carl Detering had been appointed as his successor, and Detering had applied to the court to determine the order in which the claims against the receiver should be paid. The available funds were insufficient to pay all of the creditors. The circuit court ordered that payment be made in the following order: (1) compensation to the receiver, including his attorney and his auditor; (2) federal taxes for unemployment insurance and old age benefits exacted by Titles VIII and IX

of the Social Security Act, Vol. 49, United States Statutes at Large, pp. 636 to 645. ¹ See also §§ 301 to 1305, Federal Code Annotated; (3) personal property taxes; and (4) wages. These classifications are followed by three others. The claimants in the first three of the enumerated divisions are the respondents. We have mentioned all of the appellants and all of the respondents. The three classifications which we have not enumerated are not parties to this appeal.

March 14, 1933, Biles was appointed receiver by an order of the circuit court which authorized him to continue the corporation's business. The type of business is indicated by its name. In 1938 it was discovered that the business was being operated at a loss, and on April 25, 1938, Biles resigned. On the same day the aforementioned Detering was appointed receiver with instructions to liquidate the business. The assets which came into Detering's possession were lumber of the value of $24,500 and other items aggregating $3,817.56.

The defendants had worked for Biles in the company's plant. The aforementioned lumber, of the value of $24,500, was in part the result of their toil. Their wage claims for the period of March 28, 1938, to April 15, 1938, remain unpaid and aggregate $12,312.94. The aforementioned taxes due to the federal government were for the years 1937-1938 and total $12,592. The personal property taxes, which we have also mentioned, aggregate $6,529.40. It is stated on behalf of the receiver, his attorney and his auditor that the amount of their compensation has not been determined. In fact, this controversy presents no issue concerning the amount due to anyone, but merely the order in which payment shall be made out of a fund which is insufficient to meet the demands of all.

According to the defendants' (appellants') brief, the basis of this suit is a contention "that they were employed by the Receiver of the Central Door & Lumber Company for the purpose of caring for, protecting and carrying on the business of the said Company, and that, therefore, their claims are part of the cost of administering said Receivership and constitute an administrative expense and should be placed in class one instead of class four, and that, in any event, their claims should not be deferred to the claim of the United States under the Social Security Act or of the claim of Martin T. Pratt, Sheriff and Tax Collector of Multnomah County, Oregon, for personal property taxes." Possibly, we have already made the matter clear, but to remove all uncertainty we state that all of the claims involved in this proceeding were incurred during the receiverships.

■ It is true, as the defendants state, that the term "costs of administration" includes not only compensation for the receiver, but also all other obligations incurred by him in the discharge of his duties. Gerdes on Corporate Reorganizations, § 613. But a receiver, since one is essential when control of property is assumed by courts, is not merely a creditor—he is an official of the court which appointed him, and that being true, his compensation is an item of taxable costs. In *Stacy v. McNicholas*, 76 Or. 167, 144 P. 96, 148 P. 67, this court, in referring to the receiver's compensation, said it "was taxable as part of the costs." In *Bauer & Son v. Wilkes-Barre Light Co.*, 274 Pa. 165, 117 Atl. 920, 24 A. L. R. 1171, the same conception of the receiver's compensation was employed. We quote:

"The receiver's remuneration and costs are payable before distribution of the assets. 1 Clark, Re-

ceivers, § 826, p. 905. Compensation to a receiver is part of the costs and expenses of the suit (Alderson, Receivers, pp. 859, 860), and his compensation is charged on the funds which came into his hands (Alderson, Receivers, p. 865; Beach, Receivers, § 771; High, Receivers, 915 et seq.). The same rule is applicable to the fees of receiver's counsel. 34 Cyc. 352. 'The expense of the audit, costs of this appeal, and also amount'allowed as counsel fees should be paid in full as part of the costs.' Pennsylvania Engineering Works v. New Castle Stamping Co., 259 Pa. 378, 388, 103 Atl. 218. 'By performing services for its receiver in the prosecution of the suits, the attorneys were in reality serving the court that appointed him. * * * Reasonable attorney fees, like other proper expenses incurred by the receiver, are preferred claims, and take precedence over pre-existing liens.' City Bank v. Bryan, 76 W. Va. 485, L. R. A. 1915F, 1219, 1221, 86 S. E. 10.(

"In New Jersey v. Lovell, 31 L. R. A. (NS) 988, 102 C. A. A. 505, 179 Fed. 321, in which it was claimed that a state franchise tax should precede the administration expenses of a receivership, it was held that the administration costs were first payable, the court saying: 'It is clear that, if the administration of law is to be respected, a court without power or means to pay for carrying out its orders must refuse to make such orders; otherwise its helpless jurisdiction will incur merited contempt.'

"If the rule were otherwise, that a receiver's compensation and counsel fees are not part of the costs and preferred for payment out of the fund in his hands, we would have in many instances, this anomalous and unjust result; the fund would be raised entirely by the efforts of the receiver and his counsel, without which there would be no fund at all, yet it would be completely swept away from them and into other pockets by reason of priority of claim, and they would go unrequited for their labors. Receivers in many instances, where the conservation of assets is vital, could not be raised up if this were the rule."

- The report of that decision in the above-mentioned volume of American Law Reports is followed at pages 1174 to 1178 by a digest of American and English decisions which considered whether a receiver's compensation possesses priority over other expenses. All of the decisions there reviewed, with the possible exception of *Nessler v. Industrial Land Development Co.*, 65 N. J. Eq. 491, 56 Atl. 711, held that his compensation enjoys priority over the general costs of administration. In the decision last mentioned the priority was denied, but only because the compensation had never been fixed or allowed by the court. In *Jeffers v. New Jersey & P. R. Co.*, 86 N. J. Eq. 68, 97 Atl. 32, a later decision, the priority was conceded. The annotation includes *St. Paul Title Ins. & T. Co. v. Diagonal Coal Co.*, 95 Iowa 551, 64 N. W. 606, wherein the court held, according to the annotation, that "costs, a proper part of which consisted of the receiver's fees, were entitled to a preference over all other claims, including those of laborers who had worked for the receiver." In that case, a receiver had been appointed for a coal company. After his appointment 95 employees of the company intervened in the receivership proceedings, alleging that within 90 days of the receiver's appointment they had worked for the company earning wages which remained unpaid. They claimed that they were entitled to preference over all other creditors. Subsequently the court entered an order holding that they were preferred creditors (under a local statute). Next, the court granted the receiver authority to sell the property of the coal company and out of the proceeds (1) pay a note upon which he had borrowed $3,000; (2) pay his employees; and (3) pay all other expenses of the receivership. Following the entry of this order five employees

of the receiver intervened claiming that $213.87 wages was due them. They asked for preference as preferred creditors. From the sale of coal and other personal property belonging to the company $3,051.66 was received. The sale of real property brought $4,500. Out of these proceeds the following claims were paid: expenses incidental to the operation of the mine, the $3,000 note, compensation to the receiver of approximately $800, the fees of his attorneys, etc. After these disbursements had been made only $16.12 remained. At this juncture the 95 labor claimants appealed. In sustaining the receiver's act in having made the above disbursements, the court said:

"It is the usual rule that the costs are to be first paid; and we would not be justified in assuming that the rule in that respect was intended to be changed by the legislature in cases like this, unless the act clearly so provided. No such presumption can arise from the language of the act. Under it the costs must be paid, to the exclusion of all claims, including labor claims. * * * The fees of the receivers and their attorneys were as properly a part of the costs as any other sum necessary to be expended under the order of the court in taking the property and in carrying on the business."

In *Sullivan v. Madeleine*, 115 W. Va. 115, 175 S. E. 521, a merchant (appellant), who had sold supplies to the receiver, contended that the latter and his counsel should not have been given preference "over appellant and others who rendered services for or furnished materials or merchandise to the receiver on his orders." The court sustained the preference, and in so doing cited among other authorities 53 C. J., Receivers, p. 267, from which we quote:

"The costs of administration are given precedence over duly authorized and properly incurred operating expenses of the receivership."

In *In re Dissolution of Henry Smith Floral Co.*, 260 Mich. 299, 244 N. W. 480, the receiver had been authorized to operate the business and to issue receiver's certificates in order to finance the operations. The order granting this authority constituted 'the certificates to be issued a first lien upon all of the assets of the corporation, and authorized the receiver to execute an indenture securing their ¡payment. The receiver, after executing the indenture, issued certificates. Still later, when a sale of the property had been authorized, the court fixed the receiver's compensation and that of his ·counsel by an order which gave them precedence over the lien accorded the certificates. The appellants, who were the holders of the certificates, claimed that the latter constituted a first lien and that, therefore, they were entitled to 'priority over the compensation awarded to the receiver and his attorney. Rejecting this contention, the decision stated:

"This construction is too narrow. The receiver acts as the arm¡of the court and the court retained power to compensate its officer and his legal advisors.   *   *   * The compensation of a receiver and his attorneys is out of funds or property in custodia legis, and no lien, authorized ¡by the court, on the funds or property has priority of such court administrative costs.   *   *   * The order, authorizing certificates to be a first lien, did not prevent the court from first paying the costs of the receivership.   *   *   * The fees¡of the receiver and the attorney for him are court expenses of the receivership and have priority of first lien receiver's certificates. Tardy's Smith on Receivers (2d Ed.) § 577."

In *Gordon ¡v. Como Consol. Mines Co.*, 55 Nev. 13, 23 P. (2d) 372, the court, after having appointed the plaintiff receiver of the mines company, fixed the compensation of the receiver and his attorney and then

ordered that those sums prorate with all claims payable. The outstanding receivership certificates almost equalled the available funds. We now quote from the decision:

"The greater part of these claims is 'represented by receiver's certificates issued largely to watchmen who are kept on the ground to watch the machinery and buildings and who also did assessment 'work on the claims belonging to the company."

In other words, their status was similar to that of our present defendants'. In holding that 'the court erred in denying the receiver and his attorney priority, the decision said:

"It is well established that the compensation of the receiver and the compensation of his attorney are a part of the costs of the receivership and must be accorded priority of payment over receiver's certificates."

In *Campbell v. Nichols*, 145 Wash. 614, 261 P. 408, one Nichols, who had become insolvent, owned a farm of 2200 acres and under a lease operated 'another of 640 acres. His creditors brought about the appointment of one Fraser as operating receiver of the farms. At the end of six years it developed that the 640 acre tract had been surrendered to its owner, that default had occurred in payment of the mortgage upon the 2200 acre farm, that accumulated interest remained unpaid, that receiver certificates issued pursuant to a court order were outstanding, and that the available funds were insufficient to retire the indebtedness. In recognizing that the receiver's compensation had priority of claim upon the available cash, the court said:

"It is, we think, a universal rule of law that the necessary and proper compensation of a receiver and his attorneys is a part of the costs of the receivership

and entitled to priority, even over receiver's certificates. 34 Cyc. 351, 352. 'An order of the chancellor authorized a receiver of railroad property to issue certificates of indebtedness, which should be a first lien "in preference to any mortgage, judgment, or other liens or claims." Held that the allowance to the receiver and his counsel had priority over such certificates which in turn had priority over claims for operating expenses'."

■■ The defendants, in support of their contention that their wage claims are entitled to priority over the claims of the receiver, his attorney and auditor, cite the decisions which we shall now review. In *Philadelphia Dairy Products Co. v. Summit Sweets Shoppe*, 113 N. J. Eq. 458, 167 Atl. 667, the controversy was between the general administrative expenses of the receivership and the claims against the insolvent corporation. The decision held that the former were entitled to priority. *Geran v. New Jersey Sand & Gravel Co.*, 114 N. J. Eq. 414, 168 Atl. 817, held that taxes assessed during the receivership were entitled to priority over wages earned prior to the receiver's appointment. *Randolph v. Scranton M. B. R. Co.*, 10 F. Supp. 699, which was concerned with the receivership of a railroad property, held that "the receivers' fees, attorneys' fees and other expenses incurred by the receivers" were entitled to precedence over the lien of a mortgage upon the property. It did not define what was included within the term "other expenses." It further held that the "receivers' compensation, counsel fees and other expenses incurred by the receivers" were entitled to precedence over taxes assessed by Pennsylvania upon the gross receipts of the railroad. In so holding, the decision relied upon the legal principle which grants priority upon both income and corpus to the operating expenses of a receiver of a

public utility who has been directed to continue its operation. *Western Powder Mfg. Co. v. Interstate Coal Co.*, 5 F. Supp. 619, had its inception with the appointment of a receiver for a coal company, but shortly assumed the form of a controversy between two groups of rival industrial unions who charged each other with violations of the Sherman Antitrust Act, the National Industrial Recovery Act and a code of fair competition which had been adopted under the latter statute. It developed that the petitioners, a group of miners who had worked in the mine and whose wages remained unpaid, had mined 87 tons of coal which they were able to identify and which the receiver sold for $200. Concerning this circumstance, the decision stated:

"Therefore, it is only equitable that there be provision by this decree for the receivers to pay to the petitioners the sum of $200 to apply upon wages due for the production of the coal in accordance with their respective productions of coal."

In other words, the court recognized that the petitioners had a lien upon the coal which their toil had produced. The defendants in the case before us claim no lien, but urge that their rights to the funds on hand have precedence over all other claims. We find nothing in *Gehr v. Mont Alto Iron Co.*, 174 Pa. 430, 34 Atl. 638, which helps in the solution of the issue before us. In that case after the iron company had become insolvent a receiver was appointed who was authorized to operate the company's plant and convert its raw materials into iron. After all of the company's belongings excepting real property had been sold, the general creditors claimed that the cash should be employed for their benefit to the exclusion of the holders of the company's bonds amounting

to $150,000, for the reason that the day of maturity of the bonds had not yet been reached. The lower court deemed taxes assessed during the period of the receivership as one of the items entitled to payment. In holding that no error had been committed in including the bondholders and the tax claimants among the general creditors who were entitled to share in the cash on hand, the court made the following statement, which our present defendants quote: "If the labor and other expenses incident to conducting the business of the furnace and the farms, are to be paid by the Receiver, why not the taxes? All are alike debts incurred by the court in the administration of the trust." Apparently this decision was not concerned with any claim of the receiver to compensation. *City Bank of Wheeling v. Bryan,* 76 W. Va. 481, 86 S. E. 8, L. R. A. 1915F, 1219, was not concerned with any issue of priorities, but solely with the contention presented by the receiver that no court except the one which had appointed him possessed the right to fix the fees payable to his attorney. In that case a receiver appointed by the circuit court of Marshall county instituted a suit in the circuit court of Marion county and eventually secured judgment for the relief which he sought. Concurrently with its entry the circuit court of Marion county awarded to the receiver's attorney fees amounting to $10,000. The decision under review held that only the court which appointed the receiver had authority to fix fees. It pointed out that attorneys' fees for services rendered to a receiver are not allowed directly to the attorney but to the receiver as a part of his expenses. The award to the attorneys was set aside. *Linch v. Guarantee Trust Co.,* 180 App. Div. 882, 167

N. Y. Supp. 34, is a per curiam decision, 10 lines in length. It states:

"The plaintiff should not have been required to pay this recovery in the first instance, but the same should be a first lien upon the funds in the hands of the present receiver, and entitled to priority in payment over everything except taxes and necessary current operating expenses."

The preliminary statement indicates that the only matter before the court was a determination of the amount due as compensation to the estate of the deceased receiver. *Aetna Trust & Savings Bank v. Nackenhorst*, 188 Ind. 621, 122 N. E. 421, was a proceeding instituted by the receiver of a construction company to reduce to the receiver's possession $45,079.13 due from the City of Indianapolis for the construction of a municipal improvement. Before it had completed performance of the contract the construction company became insolvent, abandoned its undertaking, and a receiver was appointed for it. The receiver completed performance of the contract. In order to obtain needed funds the construction company, before its insolvency, assigned to a bank the "assessment roll" which apparently was the source of the sums payable to the contractor. The bank insisted that, as assignee of the assessment roll, it was entitled to receive the above sum of $45,079.13. The contractor's surety also laid claim to that fund, and two sub-contractors or materialmen insisted upon payment of their claims. The city resisted all of these demands. Thus it will be seen that the case involved no issue similar to that before us. The trial court awarded to the receiver as compensation for himself, his attorney and his engineer $2,550 and directed that its payment should be preferred to all

other creditors. In holding that the receiver, and not the bank, was entitled to payment of the balance due from the city, the decision under review said:

"The costs and expenses of completing the work after its abandonment by the Construction Company, including the allowance to the receiver and all court costs, should be given priority over all other claims."

The defendants' brief quotes that sentence, but the reason which prompted the court so to speak possesses significance. It follows:

"The incompleted work at the time the contract was abandoned by appellant's assignor afforded no basis for an assessment against property. The completion of the work was required in order that the inchoate interests might be lifted up and placed on a property basis. The cost of thus completing the work must be given first place in the distribution of the assets. * * *"

In other words, had it not been for the fact that the receiver expended funds in the completion of the work the property could not have been assessed. In the absence of an assessment the fund of $45,079.13 would not have come into existence. The court evidently reasoned that since the receiver's expenditures created the fund, he was entitled to a lien upon it. *Harrison Improvement Co. v. Guardian Trust Co. of New Jersey*, 106 N. J. Eq. 445, 151 Atl. 103, involved an application of the same legal principle. The only other decisions from which the defendants' brief quotes are *Atkinson & Co. v. Aldrich-Clisbee Co.*, 248 Fed. 134, and *Klages v. Freier*, 225 Iowa 586, 281 N. W. 145, in each of which it is said that a court which appoints a receiver owes a duty to see to it that those who deal with him are paid their just demands. That rule is, of course, sound. But, since a judicial officer cannot make a dollar do double

duty in the discharge of debts, the rule is rather a word of admonition to all courts which appoint operating receivers to watch their expenditures carefully lest some who deal with the receiver will eventually receive nothing. In the present instance, we are told that the receiver (Biles) was authorized to continue the plant's operation in order to avoid the necessity of regulating the plant's employees to the swollen ranks of the unemployed. It appears from the record that the moment it was disclosed to the court that the business was being operated at a loss, the court immediately took the only course available for the protection of the receiver's creditor: the operating receiver was promptly discharged and a liquidating receiver, with instructions to terminate all operations, was appointed. Finally, the defendants cite § 32-704, Oregon Code 1930, in support of their claim for preference. But in *Security Trust Co. v. Goble R. Co.*, 44 Or. 370, 74 P. 919, 75 P. 697, this court, referring to that section of our laws, said:

"As we read this statute, it was not intended that such claims should be paid out of the corpus of the property in the hands of the receiver, but from the first receipts and earnings of the property coming into his hands after paying current operating expenses accruing under his administration; that is to say, the surplus of earnings coming into the hands of the receiver after his appointment, above current operating expenses, should be applied to the wages of laborers accruing within six months prior to the appointment of such receiver  *  *  *."

We believe that decision properly interpreted the meaning of the act in question. Since the act prefers labor claims as a charge upon income, but not upon corpus, and since the receiver possesses no receipts or earnings of the insolvent corporation but only the

remnants of its corpus, it follows that this act can avail the defendants nothing.

■ We are satisfied that the compensation to be allowed to the receiver for himself, his attorney and auditor is taxable costs, and that since such is its nature, it will possess preference over all other sums payable by the receiver including the claims of these defendants.

■ We are next called upon to determine whether the defendants' wage claims are entitled to precedence over the aforementioned federal taxes. It will be recalled that the taxes accrued, not before the receiver was appointed, but during the course of the receivership. The Social Security Act defines the tax exacted by it as an excise tax. 42 U. S. C. A., §§ 1004 and 1101.

Volume 31, U. S. C. A., § 191 (R. S. § 3466) says:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

Section 192, U. S. C. A. (R. S. § 3467) follows:

"Every executor, administrator, or assignee, or other person, who pays any debt due by the person or estate from whom or for which 'he acts, before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate 'for the debts so due to the United States, or for so much thereof as may remain due and unpaid."

*Wirewheel Corporation v. Fayette Bank & Trust Co.,* 30 Fed. (2d) 318, involved a situation similar to that before us. The Circuit Court of Appeals for the seventh circuit, in determining that controversy, held that the excise tax involved in that controversy was secondary only to compensation due to the receiver and his attorney. In that case one Herod, in 1923, was appointed receiver of the Lexington Motor Company, a manufacturer of automobiles, with authority to continue the company's business. After several years of operation it was discovered that the receiver was insolvent. His fees, federal excise taxes, certificates issued, etc., remained unpaid. Thereupon he resigned and one Barnard was appointed his successor with instructions to liquidate the business. Barnard sold the remaining assets for $155,000, much less than the amount of the unpaid indebtedness. It will be observed that the situation before us substantially parallels that one. The federal excise tax involved in that case was a tax imposed upon the manufacture of automobiles. The district court fixed the order for payment of the receiver's creditors as follows:

"1. Receivers' and attorneys' fees   $ 47,850.00

2. United States excise taxes   19,718.86

3. State of Indiana personal property taxes   9,383.54

4. Merchandise creditors of the receiver (having no lien by order of court)   170,078.17

5. Receiver's certificates (made first liens by orders of court subject to costs and expenses   195,588.13

6. Other receivership creditors   52,197.08

         $484,815.78"

The holders of the receiver's certificates appealed and insisted that their claims should have been preferred to the taxes. The Circuit Court of Appeals, in affirming the priority of the tax charges, said:

"The receiver made the required reports to the United States government showing the number of automobiles manufactured. He only paid a portion of the excise tax. * * * The tax became due at the time fixed by the statute for filing the return. Section 5632 (e), Barnes' Code Supp. 1919-1926 (26 USCA § 885). The receiver therefore became indebted to the United States within the provision of section 3466, R. S. (31 USCA § 191) when he made his monthly reports. Price v. U. S. supra. 'The word "debts" as used in R. S. 3466 includes taxes.'

"We think the record sufficiently discloses insolvency on the part of the receiver. The debt due the United States was therefore entitled to payment in advance of the claims of the certificate holders or the general creditors.

"This conclusion is confirmed by a reading of the order of the court which fixed the status of the certificate holders.

"Respecting the county tax, we are likewise convinced that it was the intention of the court to direct (and the order so provided) that the receiver's certificates should be subject to the 'receivership costs and expenses'; that among the receivership costs and expenses were such items as receiver's fees, attorney's fees, court expenses, *and taxes* (local as well as federal)."

The defendants cite in support of their claim that their wages as laborers were entitled to priority over the federal tax: *Kennebec Box Co. v. O. S. Richards Corp.*, 5 Fed. (2d) 951; *In re Holmes Mfg. Co.*, 19 Fed. (2d) 239; and *In re Wyley Co.*, 292 Fed. 900. In the first two of these cases the tax had been assessed be-

fore the receiver's appointment. In each of them it was held that compensation for the receiver and his attorney must be paid before the taxes were discharged. In the Wyley case the insolvent had been adjudicated a bankrupt. Our understanding of that opinion is that the taxes were granted priority only over other claims against the insolvent corporation. None of those cases was concerned with a contention that laborers' wages possessed priority over tax debts.

We believe that *Wirewheel Corporation v. Fayette Bank & Trust Company* was correctly decided, and that payment of the federal taxes is to be preferred over the claims of these defendants.

There remains for consideration only the question as to whether or not the defendants' wage claims have priority over the personal property taxes. Section 69-722, Oregon Code, 1935 Supp., we believe, recognizes priority for the personal property tax. The material parts of that statute follow:

"All taxes lawfully imposed, charged or levied on real or personal property * * * shall be and hereby are declared to be liens on such real and personal property, respectively. * * * Taxes on personal property shall be a lien on all the personal property of the person assessed from and including such tax day until paid, and no sale or transfer of such personal property shall in any way affect the lien for such taxes thereon. * * * Such liens shall have priority to and be fully paid and satisfied before any and every judgment, mortgage or other lien or claim whatsoever * * *. Before any judgment or final order shall be entered or become operative in any court in this state in any of the following causes it shall first be shown to the satisfaction of the court that all taxes due or owing from the defendant, judgment debtor, legatee, devisee, executor, administrator, trustee, agent or guardian, or which may be collected from him by virtue of the

assessment and taxation laws of this state, have been paid, to wit: * * * 3. Any proceeding to enforce the payment of a debt where the property involved is a stock of merchandise, or other assessable personal property. * * *''

It follows from the above that, in our opinion, the order of the circuit court is free from error.

We are not unmindful of the fact that the defendant's claims are based upon wages earned, and that a wage earner in a manufacturing plant does not expect to extend credit. We gave those facts earnest consideration in studying the precedents and in endeavoring to find the rule applicable to this case. Our consideration of the briefs of the parties and of the authorities which came to our attention has satisfied us, however, that the law assigns priority to the receiver's fees and to the taxes, over the defendants' wages. We are without authority to change the law. By the ''receiver's fees'' we mean compensation for him, his attorney, and his auditor.

The order of the circuit court is affirmed. Costs and disbursements will not be allowed to either party.

RAND, C. J., and KELLY, BELT, BAILEY and LUSK, JJ., concur.